[No. 29582. *En Banc.* July 5, 1945.]

THE STATE OF WASHINGTON, *on the Relation of Doris Cook Case, as Executrix, Plaintiff,* v. THE SUPERIOR COURT FOR GRANT COUNTY, *Respondent.*[1]

*Moe & Hunter* and *William M. Clapp,* for relator.

*Crollard & O'Connor,* for respondent.

MALLERY, J.—There is no dispute in the facts in this case.

Mabelle Cook and T. J. Cook were married on or about the 16th day of December, 1922. There were no children born as the issue of this marriage. T. J. Cook died on the 28th day of June, 1943, having previously devised his property, which was separate, to his children by a former marriage. After his death, the surviving spouse, Mabelle Cook, peti-

'Reported in 160 P. (2d) 606.

tioned the court for a family allowance and was granted the sum of $575 on the 14th day of September, 1943, which was paid. On the same day, on the petition of Doris Cook, the executrix named in the will of T. J. Cook, an order of solvency was entered. Thereafter, a petition for an additional family allowance was made to the executrix and was denied.

On the 9th day of February, 1944, Mabelle Cook commenced an action against the executrix for an additional family allowance. Prior to the trial of the action and on the 9th day of October, 1944, Mabelle Cook died. Subsequently, on a hearing held on a motion to substitute Margaret Harris, executrix of the estate of Mabelle Cook, as plaintiff in the action and also to consider a plea in abatement of the matter, the court entered an order providing, among other things, as follows:

"It is here and now considered and ordered that Margaret Harris, as executrix of the Estate of Mabelle Cook, deceased, be and she is hereby substituted as party plaintiff for the purpose of the further prosecution of this action."

The legal question herein is a case of first instance in this state. It is: Does a widow's right to a family allowance survive when her death occurs prior to the time an allowance has been made and entered? Upon this question, we quote the language used in *Easton v. Fessenden*, 65 R. I. 259, 14 A. (2d) 508, 511:

"Many decisions from other jurisdictions have been cited to us by both parties. We have examined those decisions and find no case upon a statute exactly like our own. The wide variance in the language of the statutes of other states has resulted in what appears as a conflict of authority. As a matter of fact, such a conflict is more apparent than real, and disappears in most if not all cases when proper consideration is given to the language of the statutes which are the basis of apparently conflicting decisions.

"Generally speaking, the cases fall into two distinct classes. One class deals with statutes which give to the widow a fixed and definite allowance of certain personal property out of her husband's estate in mandatory terms. Under such statutes, it is generally held that the widow's right to the allowance will pass to her personal representa-

tive as part of her estate. *Brown, Admr. v. Joiner, Admr.,* 77 Ga. 232; *Pyles v. Bowie,* 123 Md. 13; *Bratney, Admr. v. Curry,* Ex. 33, Ind. 399; *In re Estate of Phillips,* 27 Ohio N. P. (N. S.) 142; *In re James' Estate,* 38 S. D. 107; *In re Lux's Estate,* 114 Cal. 89; *Poupore v. Stone-Ordean-Wells Co.,* 132 Minn. 409; *Allen v. Hempstead,* 154 Ill. App. 91. Cases of the other class involve statutes which leave the amount of the widow's allowance, and the question of whether it shall be granted at all, to the discretion of a court or other body or person. Under these statutes, the cases generally hold that the right to the personal property of the husband's estate therein described is personal to the widow and will not pass to her executor or administrator. *Adams v. Adams,* 10 Metc. 170; *Drew v. Gordon,* 13 Allen 120; *Zunkel v. Colson,* 109 Ia. 695; *Ex Parte Dunn,* 63 N. C. 137; *In re Bayer's Estate,* 95 Neb. 532; *Tarbox v. Fisher, Admr.,* 50 Me. 236; *Johnson's Estate v. Johnson's Estate,* 41 Vt. 467; *In re Hearn's Estate,* 195 A. (Del.) 367."

The survival or nonsurvival of the action in the jurisdictions of this country appears to turn on the point of time when the property, by virtue of the widow's statutory right to an allowance, vests. If the property allowance vests immediately upon the death of the husband, the action survives; if it does not vest until the allowance is made, and the widow dies prior thereto, the action abates. The time the property is determined to vest is dependent upon the language of the statute in each jurisdiction.

While the authorities are not completely harmonious on the question here involved, we think the above-cited case represents the weight of authority and expresses the better reasoned rule.

 Our statute, Rem. Rev. Stat., § 1476 [P. P. C. § 205-7], reads as follows:

"In addition to the awards herein provided for, the Court *may* make such further reasonable allowance of cash out of the estate *as may be necessary* for the maintenance of the family according to their circumstances, during the progress of the settlement of the estate, and any such allowance shall be paid by the executor or administrator in preference to all other charges, except funeral charges, expenses of last sickness and expenses of administration." (Italics ours.)

If the court, in its sound discretion, may determine that no allowance is necessary and hence deny one in any amount whatever, it would follow that a right to an allowance would not vest immediately upon an application for one.

It is contended that the court is without power to wholly deny an allowance but may only exercise discretion as to fixing the amount. We do not agree that this was the legislative intent of the statute.

We therefore hold that the right to the family allowance in this case is personal to the widow, and that the action does not survive to the executrix to her estate.

■ This matter comes before this court on an order to show cause why a writ of prohibition should not issue, as otherwise the cause will be brought on for trial. The respondent does not raise the question of the appropriateness of the form of this action to settle the question of law involved. Indeed, she requested, for reasons of convenience and economy, that the legal question be here decided. However, on our own motion, we raise the question of whether or not a petition for a writ of prohibition should lie in the instant case.

Rem. Rev. Stat., § 1027 [P.P.C. § 17-1], reads as follows:

"The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person [L. '95, p. 119, § 29]."

In *State ex rel. Cheson v. Superior Court,* 22 Wn. (2d) 947, 157 P. (2d) 991, this court said:

"Prohibition does not lie to review interlocutory orders of a court having jurisdiction of the subject matter of litigation. In *State ex rel. Prentice v. Superior Court,* 86 Wash. 90, 149 Pac. 321, p. 93, is found a succinct statement of the rule, and which has been applied in innumerable instances:

" 'Where the superior court has jurisdiction of the subject matter in controversy, prohibition will not lie to prevent an erroneous exercise of such jurisdiction, where there is an adequate remedy by appeal or writ of review. The writ is not issued to prevent the commission of mere error, nor to take the place of an appeal or perform the office of a writ

of review for the correction of error. The writ will only issue to inferior courts where they are proceeding, or threatening to proceed, without, or in excess of, their jurisdiction.' "

Having held that the action abates, it follows that there is no subject matter upon which the court could exercise its jurisdiction. Therefore it would act, if it acted at all, without jurisdiction.

█ A cross-complaint has been entered in this action. As to its survival, *State ex rel. Atkins v. Superior Court,* 1 Wn. (2d) 677, 97 P. (2d) 139, is squarely in point. Therein we said:

"Respondent argues that relator has made no case for the the issuance of a writ of prohibition, because it does not appear that the trial court is acting without or in excess of its jurisdiction, and because an adequate remedy by appeal exists. We hold that, in indicating that it will proceed to hear, in the divorce action, the issues raised by Mr. Gerts' cross-complaint, the trial court is acting in excess of its jurisdiction, as that action has abated, the court having only jurisdiction to enter an order of dismissal. The death of Mrs. Gerts is admitted. The jurisdiction of the court does not depend upon any controverted fact which it must determine. *State ex rel. Hopman v. Superior Court,* 88 Wash. 612, 153 Pac. 315."

The writ will issue.

BEALS, C. J., STEINERT, BLAKE, ROBINSON, and GRADY, JJ., concur.

MILLARD, J. (dissenting)—I dissent. Uniformity of the law (which is certainly a very desirable purpose that ought to be considered if we would have other than an indifferent exposition of the law) no longer obtains. It would be a futile effort to cite authorities in support of the rule that mere error is not a valid basis for issuance of the writ in the case at bar, in view of the disposition of this court to follow the "modern trend" and aid in furtherance of the program of a government of men not of laws.

SIMPSON, J. (dissenting)—January 26, 1945, relator filed in this court for a hearing petition for an alternative writ of

prohibition to restrain respondent from proceeding to try the issues in a civil action. A show cause order was issued by the chief justice, and the argument was heard by the court.

The facts as contained in petition of relator and in the transcript of the proceedings in the superior court, filed in this court and entitled "Relator's Exhibit 'A,'" are as follows: T. J. Cook and Mabelle Cook were husband and wife. Mr. Cook died July 1, 1943. His nonintervention will was admitted to probate and relator Doris Cook Case was confirmed as executrix. Mrs. Cook applied for and was granted an allowance of one hundred fifty dollars per month from the date of the death of Mr. Cook to September 14, 1943, plus a hospital charge of two hundred dollars. Upon the last date named, the estate was declared solvent.

Mrs. Cook then made application to the executrix for a one-hundred-fifty-dollar per month allowance, plus the cost of moving from her home on the demand of the executrix. The claim was rejected, and Mrs. Cook then brought an action in the superior court to have a proper family allowance determined. Among other things, the complaint contained the following allegations:

"4. That plaintiff contracted asthma shortly after her marriage to T. J. Cook, and was critically ill in a hospital in Ellensburg, Washington, for several months immediately following their marriage; that plaintiff lost over thirty pounds and had not fully recovered from her illness at the time of the sudden death of said T. J. Cook which occurred on July 1, 1943; that ever since being released from the hospital the plaintiff has had recurring attacks of asthma and has to have medical attention quite often. That prior to the marriage of plaintiff with said T. J. Cook, she was a strong and healthy woman and had never had any attacks of asthma before. . . .

"10. That the plaintiff, because of her physical condition and constant need of medical attention, as well as her need for maintenance and support in keeping with the circumstances of the decedent's estate, coupled with the expense of moving as demanded by the Executrix, is $150.00 per month plus light, heat, telephone, water service and general maintenance for herself as the widow of T. J. Cook, deceased, as and from September 15, 1943."

The executrix by answer denied the widow's right to recover any allowance and by cross-complaint sought judgment in the sum of two thousand dollars, the claimed value of personal property alleged to have been taken from the estate by Mrs. Cook. The reply put in issue the allegations contained in the cross-complaint.

Mabelle Cook died October 9, 1944, and a motion was then made to substitute Margaret Harris as plaintiff. Relator then filed a supplemental answer, setting out the fact that Mrs. Cook had died, and asked that the complaint be dismissed. January 27, 1945, the court entered an order of substitution and, in the same order, denied the demand for a dismissal of the action.

It is contended by the relator that the right to recover a widow's allowance abated upon the death of Mrs. Cook. That is the only question before us. If the right to an allowance abated upon the death of Mrs. Cook, then the writ should issue. Otherwise it should be denied.

A reading of our decisions relative to the allowance of a widow indicates that this court is definitely committed to a liberal construction of the statutes relating to allowance of family allowance to the end that widows and children shall not be in want. The support of the widow and minor children of a decedent is one of the highest charges against his estate. The object of the statute is to afford to those who are dependent upon the husband and father provision for support during the time the estate is being probated.

The statute rests on a sound public policy. As it was the duty of the husband and father to provide for his family during his lifetime, it is the policy of the law to compel the estate to support the family after the death of the head of the family. *Griesemer v. Boyer*, 13 Wash. 171, 43 Pac. 17; *In re Heilbron's Estate*, 14 Wash. 536, 45 Pac. 153, 35 L. R. A. 602; *In re Lavenberg's Estate*, 104 Wash. 515, 177 Pac. 328; *In re Hooper's Estate*, 117 Wash. 463, 201 Pac. 740; *In re Hilleware's Estate*, 159 Wash. 580, 294 Pac. 230.

Orders for allowances may be made to apply retroactively. *In re Murphy's Estate*, 30 Wash. 9, 70 Pac. 109; *In re Pugh's Estate*, 22 Wn. (2d) 83, 154 P. (2d) 308.

In construing § 973 of the Code of Procedure, p. 322, which contains provisions entirely like the present statute, Rem. Rev. Stat., §§ 1475 and 1476 [P.P.C. §§ 205-5 and 205-7], this court said in the *Griesemer* case:

"It seems to us that the language of the statute is plain, explicit, comprehensive and general; that a fund is here absolutely and without qualification protected and provision made for its distribution in a particular way, and that if it be found by the court that the amount 'thus exempt' be insufficient for the support of the widow and minor child or children, it has no other duty to perform than to make the further reasonable allowance provided for by the statute; that the question is not whether the amount thus exempt, together with some other amount which the widow or some one or other of the children might own as a separate estate, is insufficient for their maintenance, but it is whether the amount thus exempt is insufficient. It is an absolute right that the statute gives unqualified by collateral conditions.

"The allowance for the maintenance of the family according to their circumstances during the progress of the settlement of the estate is an allowance out of the estate which is being settled, and not an allowance out of some other estate. Neither does it seem to us that it depends upon the question of necessity, or of the capability of the wife to provide a good living for herself and children outside of the estate. It might eventuate that the wife was an accomplished musician or a noted lecturer, or that she could command a salary which would be amply sufficient to support herself and family, but that certainly, under the direct provisions of our statute, would not deprive her of the right to this support out of the moneys of the estate; and the fact that she has a separate estate of her own, no matter whether it came to her through the medium of a life insurance policy or in any other way, cannot be held to militate against her right to receive the allowance provided for by the statute."

The factual situation in the case at bar is entirely like that present in *In re Bell's Estate,* 70 Wash. 498, 127 Pac. 100. In the cited case, it appeared that W. C. Bell and wife were residents of Kentucky. In April, 1910, they were injured in a street-car accident in Seattle, Washington. Mr. Bell was killed instantly, and Mrs. Bell died in the autumn of

1911 as the result of her injuries. During the latter part of 1910, an administrator was appointed for the estate of W. C. Bell by the superior court of King county. Certain claims were then presented to the administrator for services rendered to Mrs. Bell after her husband's death. The claims were for hospital, hotel, doctor's and nurse's services, and for the expense of a trip from Kentucky to Seattle made by Mrs. Bell's brother in order to care for his sister and her affairs. The claims were allowed by authority of Rem. & Bal. Code, §§ 1466, 1467, which read:

"In case of the appointment of an executor or administrator upon the death of the husband, as mentioned in the last preceding section, the court shall, without cost to the widow, minor child or children, set apart, for the use of such widow, minor child or children, all the property of the estate by law exempt from execution; if the amount thus exempt be insufficient for the support of the widow and minor child or children the court shall make such further reasonable allowance out of the estate as may be necessary for the maintenance of the family according to their circumstances, during the progress of the settlement of the estate.

"Any allowance made by the court in accordance with the provisions of the preceding section shall be paid by the executor or administrator in preference to all other charges, except funeral charges and expenses of administration."

The claims were allowed by two orders, the first dated February 4, 1911, and the second, December 9, 1911, the last one being subsequent to the death of Mrs. Bell. The appeal sought a review of the orders just mentioned. Because of the great importance and far-reaching consequences of a decision in this case, I quote from the opinion of this court as written by Judge Ellis:

"By § 1467 this allowance is given preference over all other charges, except funeral charges and expenses of administration. Section 1571 makes it the duty of the administrator, as soon as he have in hand sufficient funds, to pay the funeral charges, expenses of last illness, and the allowances made to the family. Under these sections, as construed by this court in In re Murphy's Estate, 30 Wash. 9, 70 Pac. 109, we think the court was justified in classifying and ordering these claims paid as allowances to the widow. In

that case it was held that money expended by the surviving spouse, for household and family expenses and for physicians' charges on account of the last illness and death of minor children, was properly allowed as a part of the family allowance. The statute makes no distinction as to the character of such allowance as between the widow and the minor children. The humane considerations, which are the evident basis of the statute, are as potent in the one case as in the other. Though the claims were large in amount, there is no evidence that they were exorbitant. The gravity of the widow's injuries, the long duration of her illness, her great distance from home, and the manifest necessities of her case, are sufficient to account for a large and necessary expense."

The opinion, after discussing questions relative to notice of the hearings upon the claims, approved the action of the probate court in allowing the claims as presented. I call especial attention to the fact that the claims were approved as for a widow's allowance, although no claim was ever filed by Mrs. Bell for such allowance.

The case demonstrates the liberal construction placed upon the statute and the concern this court has had for the protection of a surviving widow. The holding is absolutely opposed to *Easton v. Fessenden*, 65 R. I. 259, 14 A. (2d) 508, upon which the majority bases its holding that the writ should issue. The case cited by the majority is in point, but is not binding upon this court. In connection with the law of other states I call attention to the following statement from annotation in 144 A. L. R. 270, p. 279:

"According to the view taken in nearly all of the cases considering the question, it is not necessary, where application for a widow's or widower's allowance has been made, that the court, during the lifetime of the surviving spouse, shall have approved the allowance, or that property shall have actually been set aside for the benefit of such survivor, in order to entitle the estate of the survivor, after his or her death, to claim such allowance or property."

In any event, we should follow our rules as laid down in prior opinions and not those from other states.

The facts relative to Mrs. Cook's needs and necessary expenses should be considered by a court after those facts

are supplied by evidence during a trial. It seems apparent to me that that course must be followed, in view of our liberal attitude towards family allowances and the rule adopted in the *Bell* case.

The adoption of a rule as pronounced by the majority opinion will in a great many cases cause discomfort and suffering to many widows and minor children in situations where a man dies, leaving his estate in a muddled or chaotic condition. It is well known that the period of readjustment following the death of a husband and father is fraught with many difficulties. This is especially true where the survivors are ill or otherwise incapacitated to untangle the family's business affairs. If the majority opinion prevails, hospitals and professional and business men will not extend credit to a widow prior to the time her family allowance is actually made because of the fact that the allowance will abate on the death of the widow.

The writ should be denied, so that the trial may proceed in its ordinary and regular course.

----

August 9, 1945. Request for reconsideration denied.