[No. 28411. Department Two. August 18, 1941.]

HENRY A. McKILLIPS, *Respondent,* v. RAILWAY MAIL ASSOCIATION, *Appellant.*[1]

[1]Reported in 116 P. (2d) 330.

*Graves, Kizer & Graves, J. W. Greenough,* and *R. L. Greene,* for appellant.

*H. Earl Davis,* for respondent.

BEALS, J.—Plaintiff, Henry A. McKillips, who for many years had been in the employ of the postoffice department as a railway mail clerk, was injured September 9, 1938, while engaged in lifting a mail sack from the floor of a mail car.

May 18, 1923, Railway Mail Association, a mutual benefit corporation, organized under the laws of the state of New Hampshire, and authorized to engage in business in the state of Washington, issued to plaintiff its "beneficiary department certificate," whereby, in consideration of payments to be made by plaintiff and plaintiff's agreement to comply with the by-laws and rules of the association, the latter agreed to pay plaintiff certain sums in case his employment should be interrupted by accidental injury. The certificate covers both temporary and permanent disability.

October 10, 1938, plaintiff filed with the local representative of the association a "notification of disability," advising the association of the fact that he had been injured, and that he would claim benefits under his certificate above referred to. During the month of January following, plaintiff filed with the association a formal application for benefits. Paul D. Vincent, the president of the Spokane division of the association, signed two endorsements on the claim, to the effect that the claim was correct and payment thereof recommended. One of the endorsements bears date December 14, 1938, the other January 13, 1939.

The association having refused to pay the claim, plaintiff instituted this action, based upon his certificate above referred to. The action was tried upon plaintiff's first amended complaint and the defendant's answer

thereto. After denying certain allegations of the complaint, defendant, by way of affirmative defenses, pleaded certain of its by-laws, contending that plaintiff's disability, if any, did not result only from violent and accidental means, but was contributed to by a pre-existing arthritic condition; that plaintiff was neither permanently disabled nor wholly incapacitated from performing any labor or following any occupation, within the terms of his beneficiary certificate; and that plaintiff had not complied with the rules of the association in connection with the giving of notice of his injury and making due proof thereof. The issues having been made up, the action was tried to the court sitting with a jury, and resulted in a verdict in plaintiff's favor. From a judgment for $2,254 entered upon this verdict, defendant has appealed.

Appellant assigns error upon the denial of its motion for a nonsuit interposed at the close of respondent's case, and upon the denial of its motions for a directed verdict and later for the entry of judgment in appellant's favor, or in the alternative for a new trial. Error is also assigned upon the rejection of evidence offered by appellant, and upon certain instructions given to the jury.

Appellant's constitution and by-laws provide for the filing of claims for payments under certificates similar to that issued to respondent. The notification of disability and proof of claim must be accomplished upon blanks furnished by appellant. The report by a physician must be included, and the president of the local branch must attach his certificate. Failure on the part of the claimant to comply with the provisions of the constitution and by-laws shall invalidate a claim.

The notification of disability and claim which respondent filed were prepared upon blanks furnished by appellant. In the notification respondent stated that

he was piling a sack of magazines in the mail car, and "pulled muscles or ligaments in left side of back just above the hip. Did not appear that it would bother much at first, but it has turned out quite serious." In the physician's statement attached to the notification, the injury is described as "severe sacro-iliac sprain with complicating sciatica." The symptoms are also particularly described. The notification contains a statement by another physician, corresponding to the statement already referred to.

In his claim, respondent stated that his disability might continue for six months or a year. In appellant's main office at Portsmouth, New Hampshire, the claim was amended by appellant's officers so as to read as a claim for eighty-nine days' disability, from September 16th to December 13th. Respondent was advised by the secretary, under date December 19, 1938, "When you file for additional benefits, the next claim should begin December 14th." The claim was re-referred for further statement by the attending physician, and was formally approved as correct by the local president. Later, the secretary of the association wrote the local president as follows:

"RAILWAY MAIL ASSOCIATION
"Office of the Secretary
"Portsmouth, New Hampshire,
"February 2, 1939.
"Mr. Paul D. Vincent, President,
"Spokane Branch, R. M. A.,
"Spokane, Wash.
"My dear Mr. Vincent:
"Please refer to the claim submitted by Henry A. McKillips, Certificate 17898.

"The committee on claims has given very careful consideration to this claim and cannot approve it in its present form and for the amount claimed by Mr. McKillips.

"In returning the papers to this office the committee advises that the medical evidence submitted seems rea-

sonably clear that disease is the cause of and for the prolongation of the injury sustained by the claimant.

"It is my personal belief that the committee might and probably would approve a claim for a short period of time for sacro-iliac sprain, but a sacro-iliac sprain without complications would not cover a period of more than two or three weeks at the very most.

"Will you get in touch with Mr. McKillips and see if he would agree to change the number of days claimed and, if so, I will send the papers back to the committee on claims for their further consideration.

"Fraternally yours,
"R. E. Ross
"Secretary."

Appellant complains because upon the trial respondent testified that, while lifting the sack of mail, his foot slipped, throwing him against a stanchion, severely bruising his back. Appellant contends that the claim as originally filed was so vague and indefinite as to suggest a doubt that any reason for compensation was stated, and that appellant was never given an opportunity to investigate the situation, as stated by respondent on the trial. Appellant's local president twice approved the claim as filed. Appellant, after respondent's injury had been drawn to its attention by a notification and claim, both seasonably filed, through its own officers amended the claim as to the period for which compensation was asked, and made such investigation of the situation as was deemed proper and adequate.

Appellant's rules and regulations governing the filing of claims under its beneficiary certificates are rather vague and indefinite as to the statements to be made in such claims. Our attention is called to no requirement that every circumstance in connection with the injury must be particularly stated, the rules being more concerned with the making of the claim upon blank forms furnished by the association and with the filing.

of the claims within a certain specified time. Apparently the matter of chief importance is the requirement that notice of the fact that a claim might be presented by a certificate holder should be promptly called to the attention of appellant's officers.

The matter of the sufficiency of a claim against an indemnity company was considered by this court in the case of *Moran Bros. Co. v. Pacific Coast Casualty Co.*, 48 Wash. 592, 94 Pac. 106. The facts in the case cited are entirely different from those here present, but this court clearly expressed the view that a claim upon which might be based liability against a policy need not state in detail, or with absolute accuracy, all relevant facts.

In the case at bar, we are convinced that respondent in good faith prepared and seasonably filed his claim, and that it cannot be held that the claim as filed did not comply with appellant's rules and regulations.

Appellant knew that respondent claimed to be suffering from a severe sacro-iliac sprain. Respondent's claim was rejected because it was deemed excessive. It would not be reasonable to hold that the claim should now be held insufficient because respondent did not claim a still larger amount.

We are convinced that appellant's contention that respondent's claim was insufficient to afford an adequate basis for some recovery by respondent, is not well founded. The trial court did not err in holding that the claim was in law sufficient.

By the certificate issued to respondent, it is provided that respondent should receive from the benefit fund

"1. A sum of $21.00 per week for such period as he may not be able to perform service as a railway postal clerk, or follow any other employment, not exceeding fifty-two weeks from day of injury resulting through causes as aforesaid. The same to be paid as provided

by the laws of this association after the required proofs have been filed with the secretary. . . .

"3. If said member during the continuance of this certificate shall sustain through causes as aforesaid injuries that shall permanently disable and wholly incapacitate him from performing any labor, or following any occupation, he shall receive for such injury the sum of $21.00 per week, payable in monthly payments until the death of said member, or until the full amount of certificate shall be paid; provided, however, that proof of permanent disability must be made in accordance with the provisions of the constitution and laws of this association."

The weekly payments were thereafter increased to $24.50, respondent being entitled to that amount if legally entitled to payment of benefits under the certificate.

Under paragraph one, respondent is entitled to weekly benefits for such period, not exceeding fifty-two weeks, "as he may not be able to perform service as a railway postal clerk, or follow any other employment." Payments under paragraph three, permanent disability, shall be made up to the full amount of the certificate while respondent should be wholly incapacitated "from performing any labor or following any occupation."

Evidence was introduced from which the jury might well have found that respondent, who was sixty-two years of age, had suffered a severe injury to the sacro-iliac joint, and that as a result of this injury, he could no longer work as a railway mail clerk or engage in any labor which would result in a strain on his back. Upon the record before us, and in view of the fact that a new trial in the action must be granted, it is not necessary to consider the question of whether the certificate establishes different rules for the payment of temporary and permanent disabilities.

Respondent's testimony to the effect that he suffered

an injury as the result of lifting a heavy mail sack is not disputed; that, as the result of this injury, respondent suffered some lost time through physical disability seems clear. It is not contended that he ever resumed his employment as a railway mail clerk. Of course, the extent of his injuries, the cause of his disability, and the amount that his injuries contributed to his disability, are in dispute. The record before us, however, shows beyond question that respondent made a case which entitled him to a finding by the trier of the facts upon the question of whether or not appellant was indebted to respondent for disability benefits under the certificate.

The trial court did not err in denying appellant's motion for a nonsuit and appellant's other motions for judgment in its favor as matter of law.

■ Appellant called as a witness Dr. Peter Reid, whose qualifications as a physician were admitted, and who had examined respondent as early as December 27, 1938. The witness testified at length concerning respondent's physical condition in connection with the injury to his back and respondent's statements concerning the same. Appellant sought to question Dr. Reid as to whether or not the injury which respondent suffered would prevent him from following any occupation other than that of railway mail clerk. Respondent objected to this line of examination, and the objections were sustained. Appellant assigns these rulings of the trial court as error.

The jury returned a verdict in respondent's favor for the maximum amount of permanent disability benefits permitted under the court's instructions.

Some policies of insurance afford a more liberal measure of protection than others. Such policies cost more by way of premiums or assessments than policies affording a more limited coverage. Under the weight

of authority, one claiming under an insurance policy which protects against disability from "carrying on any work," or engaging in "any business" or "any occupation," must show as part of his case that he is unable to engage in business or procure employment, as described in the policy.

The wording of the certificate before us, above quoted, is definite and precise. The language of the paragraph providing for benefits in case of permanent disability, while not referring to the insured's ordinary occupation, makes it a condition of liability under the policy that the insured shall be wholly incapacitated from performing any labor or following any occupation. This language is plain and unambiguous, and the courts have no authority to enlarge appellant's liability under its contract beyond the plain terms thereof. As stated by the circuit court of appeals, in *Metropolitan Life Ins. Co. v. Foster,* 67 F. (2d) 264:

"The parties were free to contract for any risks they chose, adjusting the premium charge to the risks assumed. . . . We have no more right to enlarge the liability by artificial construction of the policy than to increase the penalty of a bond or raise the face of a promissory note."

The following cases are also in point: *Garms v. Travelers' Ins. Co.,* 242 App. Div. 230, 273 N. Y. Supp. 39 (affirmed in 266 N. Y. 446, 195 N. E. 147); *American Nat. Ins. Co. v. Briggs,* 70 S. W. (2d) (Tex. Civ. App.) 491; *Thigpen v. Jefferson Standard Life Ins. Co.,* 204 N. C. 551, 168 S. E. 845; *Prudential Ins. Co. v. Davis,* 18 Tenn. App. 413, 78 S. W. (2d) 358; *Martin v. Postal Union Life Ins. Co.,* 31 Cal. App. (2d) 329, 87 P. (2d) 897.

While the courts of some jurisdictions have held that an insured need show only that by the accident he is disabled from following his usual occupation, we are convinced that the language of the contract before us

cannot be so construed, and that the authorities cited follow the better rule.

In the case of *Storwick v. Reliance Life Ins. Co.*, 151 Wash. 153, 275 Pac. 550, this court affirmed a judgment entered upon verdicts of a jury in favor of the plaintiff in consolidated actions on contracts of insurance, the insured having suffered a disability as the result of an accident. The insured had been struck on the head by a heavy timber, suffering a fractured skull and a brain injury. It was contended that the insured was not totally disabled, within the meaning of the policies. In the course of the opinion, we said:

"Under such disability clauses, we think the question of total disability should be determined in the light of the capabilities and training of the insured, especially where his capabilities and training are evidenced in the contract of insurance, as here.

"It seems to us that one is totally disabled, within the meaning of these policies, when he is so far disabled that he cannot, with any degree of success, within the range of his normal capabilities, earn wages or profit in some occupation or gainful pursuit."

There was evidence to the effect that, at the time of the trial, the insured was suffering from brain pressure, and it was held that the judgment entered upon the verdicts of the jury should be affirmed.

In the case at bar, respondent suffered no injury to his mental faculties, and his physical ability apparently was interfered with only by a decided decrease in his ability to lift heavy weights, or engage in work which placed a strain upon his back. Outside of that limitation, the evidence indicates that, within the range of his age and abilities, a large field of endeavor was open to him. Respondent frankly admitted that since the accident he had been acting as secretary and treasurer of a mining company, without agreed compensation,

the remuneration for his services apparently depending upon the success of the company.

To extend appellant's liability under the certificate before us would be to place upon appellant a burden and responsibility which it did not contract to assume, and for which it is reasonable to suppose it was not compensated.

Under modern conditions, many groups of persons, associated either because of common interests or by reason of a common occupation, form benefit associations, for the purpose of affording protection in case of accident, sickness, or death. Common experience indicates that as a rule these associations afford a limited protection for a small amount of compensation. When benefits are sought under such a policy of insurance, whatever it be called, the temptation is great to seek to extend the terms of the insurance beyond their plain meaning. On the other hand, when such insurance contracts were drafted and put in effect, they were so prepared as to reduce the premiums or assessments to a minimum, the liability under the contract of insurance being correspondingly limited.

Respondent was obligated to show a state of facts which would support a finding in his favor and that appellant was liable to respondent under the latter's certificate. *Life & Casualty Ins. Co. v. Jones*, 112 Miss. 506, 73 So. 566; *Prudential Ins. Co. v. Davis, supra; Bowen v. Metropolitan Life Ins. Co.*, 17 Tenn. App. 322, 67 S. W. (2d) 164; *Lando v. Equitable Life Assur. Soc.*, 11 Fed. Supp. 729.

Appellant was entitled to show by competent evidence that respondent was not totally disabled, within the language and intent of the certificate. The trial court erred in sustaining respondent's objections to the questions which appellant's counsel propounded to Dr. Reid.

We find it unnecessary to discuss other questions presented by appellant's assignments of error.

Because of the error above noted, the trial court erred in denying appellant's motion for a new trial. The judgment appealed from is reversed, with instructions to grant appellant's motion for a new trial.

ROBINSON, C. J., SIMPSON, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—There is evidence that respondent, who was sixty-one years old at the time of the trial of this action, and who had been a railway postal clerk for twenty-nine years, is permanently totally disabled as a result of the injury he sustained in the course of his employment.

There is no evidence that he is competent, or physically able if otherwise qualified therefor, to perform clerical or other work. The evidence of gratuitous service he performed of opening the office of a mining company, answering the telephone or transferring occasionally a certificate of stock does not, the jury found, warrant a verdict that respondent could, with any degree of success, within the range of his normal capabilities, earn wages or profit in some occupation or gainful pursuit.

The inference reasonably deducible from the evidence that respondent is permanently totally disabled is that respondent is permanently disabled and wholly incapacitated "from performing any labor or following any occupation." This is in harmony with the rule that all competent evidence in the record which is favorable to the respondent we must regard as true and must give to the respondent the benefit of every favorable inference which may reasonably be drawn from such evidence. This cause was tried to a jury, and appellent's challenge to the sufficiency of the evidence, and the motion for nonsuit, admit the truth of

respondent's evidence and all inferences that reasonably can be drawn therefrom.  *Lindberg v. Steele*, 5 Wn. (2d) 54, 104 P. (2d) 940.

Counsel for respondent correctly invokes the rule enunciated in *Storwick v. Reliance Life Ins. Co.*, 151 Wash. 153, 275 Pac. 550, in which we reviewed the applicable authorities at length.  We said:

"The argument touching this contention calls, first, for inquiry as to what is meant by the total disability clauses of these policies.  For the present, we proceed with this inquiry upon the theory that the words 'any other occupation or gainful pursuit,' as used in the policies of February 7, 1917, and February 10, 1920, and the words 'any occupation or employment for wage or profit,' as used in the policy of November 14, 1924, are unqualified by preceding words of the respective policies, though there does seem to be room for regarding them as so limited and qualified under the doctrine of *ejusdem generis.*

"To what extent an insured, under policies such as these, must be disabled in order to be considered as totally disabled, entitling him to the benefits of the insurance, has been a much litigated matter in the courts of this country.  Some few courts have seemed to go to the extreme of holding to the literal meaning of the total disability clauses in such policies.  It seems to us, as it apparently has to a majority of the courts of the United States, that such extreme holding to literal construction has not been in keeping with the real intent of the parties to such insurance contracts.  Total disability, it seems to us, is largely a relative question for determination.  One who has entirely lost his reason and one who has become physically helpless to the extent that all of his physical wants have to be supplied through the efforts of others, would, we assume, be held totally disabled and entitled to the insurance benefits under such policies, even under the doctrine of literal construction.  But even as to the latter, it is not impossible that one so physically disabled might be mentally able to direct and advise to the extent of earning some pecuniary compensation therefor.  Under such disability clauses, we think the

question of total disability should be determined in the light of the capabilities and training of the insured, especially where his capabilities and training are evidenced in the contract of insurance, as here.

"It seems to us that one is totally disabled, within the meaning of these policies, when he is so far disabled that he cannot, with any degree of success, within the range of his normal capabilities, earn wages or profit in some occupation or gainful pursuit. In *Foglesong v. Modern Brotherhood of America,* 121 Mo. App. 548, 97 S. W. 240, there was drawn in question the meaning of a total disability clause reading: 'Disability of said member which renders him unable to carry on or conduct any vocation or calling.' The plaintiff in that case was, at the time of his injury, fifty-seven years of age and had been so afflicted for some three years. He was a farmer. It was shown that he directed work to be done upon his farm and performed some light labor thereon himself, but was disabled from carrying on, other than partially, the occupation or business of a farmer, and seems to have been equally disabled from carrying on any other gainful occupation or business. It was contended that he was not totally disabled, and certain authorities holding to the literal construction view of such total disability insurance clauses were invoked. Answering this contention, Judge Broaddus, speaking for the court, observed:

" 'If such is to be the construction placed upon the policy in suit, the defendant's demurrer to the evidence should have been sustained. But we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities, and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers.

" 'Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are

seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity.' "

If a question is ever foreclosed, surely the question in the case at bar is not an open one in view of *Storwick v. Reliance Life Ins. Co.*, *supra*.

The judgment should be affirmed.

[1]Reported in 116 P. (2d) 336.