[No. 29453.    Department Two.    November 3, 1944.]

ERNESTINE BENNETT, *Respondent*, v. MUTUAL TRUST LIFE INSURANCE COMPANY, *Appellant*.[1]

[1]Reported in 152 P. (2d) 713.

*Velikanje & Velikanje,* for appellant.

*Roberts, Swanson & Tunstall,* for respondent.

BLAKE, J.—This is an action on two life insurance policies, of the face amount of one thousand dollars each, issued by defendant to one Boyd Bennett. The policies contain a stipulation for double indemnity for accidental death. The plaintiff is the widow of the insured and sues as the beneficiary under the policies.

Bennett underwent an operation for hernia on August 3, 1943. Within a few minutes after the completion of the operation, and while he was still on the operating table, he died.

Proofs of death having been submitted to it, the defendant paid the amounts of the face value of the policies, but denied double indemnity. This action ensued. Upon issue joined, the cause was tried to a jury, which returned a verdict for plaintiff. From judgment entered on the verdict, defendant appeals.

The question for determination is whether the death of the insured was accidental under the following provision of the policies:

"The additional sum payable as an accidental death benefit under this provision shall be due only upon receipt of due proof that the death of the Insured occurred in consequence of bodily injury effected solely through external, violent and accidental means of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within sixty days after such injury was sustained and as a direct result thereof, independently of any other cause, . . ."

Although there was evidence to the contrary, the jury was warranted in finding that the hernia, to correct which the insured underwent the operation, had its inception on July 24, 1943. The insured was a lieutenant in the Yakima fire department. On the day mentioned, he conducted a

ladder drill for the instruction of recent recruits in the department. One of the ladders used was a thirty-five-foot extension ladder weighing about two hundred pounds. It was what was known as a three-man ladder, that is, three men were ordinarily used in raising it: one heeling it at the butt, the other two walking under it from the top end. The insured told the recruits, however, that, in case of emergency, the ladder could be raised by two men, and he proceeded to demonstrate by walking alone under the ladder from the top end while a man heeled it at the butt.

Within a short time—two or three days—the insured called the attention of several of his associates to a swelling in his groin. He had never complained of anything of the kind before. Indeed, he had been an extraordinarily powerful man and accustomed to carrying more than his share of heavy work in the performance of his duties as a member of the department. That was manifested in his demonstration of how a "three-man ladder" could be raised by two.

That the operation was proper and necessary treatment for the hernia, there can be no question. The operation was successfully carried through without mishap of any kind. From the standpoint of technique, it was completely successful. But the patient died. Under the evidence, the jury was warranted in finding that death resulted from a cerebral hemorrhage. A postmortem autopsy was had. The physicians participating testified that death was more *probably* due to that cause than any other. In fact, by a process of elimination, they excluded all other causes of death except *possibly* a hypersensitiveness of the insured to the anesthetic. Such a cause of death, it seems, leaves no indications discoverable by postmortem examination.

In the view we take of the case, however, it is immaterial whether the cause of death was a cerebral hemorrhage or the anesthetic—notwithstanding an allegation in the complaint that the insured suffered a cerebral hemorrhage. For, if an accident may be said to be the proximate cause of death, the stipulation contained in the policies is met; in other words, it is unnecessary to determine the precise

pathological condition or change which occurred if death is the proximate result of an accident.

There was abundant evidence that the insured had sustained the hernia as a result of raising the ladder on July 24th. The jury was also warranted in finding that the operation was reasonably necessary to correct the hernia. That, but for the operation, death would not have occurred at the time, place, and in the manner it did, is obvious. If, therefore, the hernia was caused by "accidental means," the condition of the policies is satisfied.

■ This court has long been committed to the rule "that death is accidental, even though the means are intentional, where the results are unusual, unexpected, or unforeseen." *Zinn v. Equitable Life Ins. Co.*, 6 Wn. (2d) 379, 384, 107 P. (2d) 921. See, also, *Horsfall v. Pacific Mutual Life Ins. Co.*, 32 Wash. 132, 72 Pac. 1028, 98 Am. St. 846, 63 L. R. A. 425; *Hanley v. Occidental Life Ins. Co.*, 164 Wash. 320, 2 P. (2d) 636; *Kearney v. Washington Nat. Ins. Co.*, 184 Wash. 579, 52 P. (2d) 903; *Hemrich v. Aetna Life Ins. Co.*, 188 Wash. 652, 63 P. (2d) 432.

■ So, the fact that the insured sustained the hernia as a result of his voluntary act of raising the ladder alone makes the injury nonetheless "accidental." Bearing this principle in mind, we think our decision in *Kane v. Order of United Commercial Travelers of America*, 3 Wn. (2d) 355, 359, 364, 100 P. (2d) 1036, by reason of analogy in the facts, is controlling in the instant case:

"The insured received injuries from an accidental fall which aggravated an existing hernia and necessitated a surgical operation January 16, 1937. He made a good recovery until January 21st, at which time he contracted lobar pneumonia, from which he died January 26, 1937. . . . We hold, therefore, that, when death results from disease which follows as a natural though not necessary consequence of an accidental injury, it is within the terms of the accident certificate, the death being deemed the proximate result, not of the disease as an independent cause, but of the injury."

In thus holding that the accident was the proximate cause of death, it was necessary to carry the "but for which"

process of reasoning a step beyond that required in this case.

Appellant assigns error upon the giving of instruction No. 8, which contains the following:

"And so, in this case, even if you should find that the hernia of deceased was not caused by external, violent and accidental means, if you should find, by a fair preponderance of the evidence, that the death of the deceased was caused by an operation for such hernia and that such death was an unusual, unexpected or unforeseen result of such operation, then your verdict shall be for the plaintiff."

There is considerable authority for the view expressed in the instruction. See *Handley v. Mutual Life Ins. Co. of New York,* 147 P. (2d) (Utah) 319; *Taylor v. New York Life Ins. Co.,* 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959; *Denton v. Travelers Ins. Co.,* 25 F. Supp. 556; *Lee v. New York Life Ins. Co.,* 310 Mass. 370, 38 N. E. (2d) 333.

We think, however, the principle, stated in such broad terms as in the instruction, is not sound. To accept it would stamp as "accidental" every death occurring as the result of an operation, no matter how successfully and skillfully it might have been performed. In saying this, we do not mean to imply that death occurring during or following an operation may not be "accidental" when the operation is not necessitated by injury resulting from accident. If an operation is not necessitated by injury resulting from accident, then death occurring during or following the operation can be considered "accidental" only when it is the result of mishap or misadventure in operative procedure. This is the basis for holding the insurer liable in such cases as *Zinn v. Equitable Life Ins. Co., supra,* where "germs enter from without through the incision and result in septicemia."

In the instant case, there is no evidence of mishap or misadventure in the operative procedure which would warrant submission of the case to the jury on any theory independent of the premise that the hernia was the result of a prior accident. We hold that instruction No. 8, under the facts of record, was erroneous.

Appellant has assigned numerous other errors. We have

examined them and think that they are without sufficient substance to merit discussion.

The judgment is reversed and the cause is remanded, with direction to grant a new trial.

SIMPSON, C. J., BEALS, ROBINSON, and MALLERY, JJ., concur.

December 6, 1944. Petition for rehearing denied.

[1]Reported in 152 P. (2d) 716.