[No. 32364.   Department Two.   June 18, 1953.]

J. I. NEWSOM, *Appellant,* v. JOHN K. MILLER *et al.,*
*Respondents.*[1]

*Meier & Murray,* for appellant.

[1] Reported in 258 P. (2d) 812.

*Elvidge, Watt, Veblen & Tewell* and *William A. Herren,* for respondents.

HAMLEY, J.—J. I. Newsom, alleging that he had entered into a contract to sell certain corporate stock to John K. Miller, tendered the stock certificates and brought this action to recover the asserted purchase price. Defendants Miller and West Wind Corporation separately demurred to the amended complaint. The demurrers were sustained, on the ground that the amended complaint did not state a cause of action. Plaintiff declined to plead further, and an order of dismissal with prejudice was accordingly entered. Plaintiff appeals.

It is alleged in the amended complaint that appellant was the owner of a minority stock interest in West Wind Corporation; that, by the terms of the contract under which he purchased this stock, he was required, in the event he desired to sell the same, to give Miller the first opportunity to purchase it; that Miller, as holder of the majority of the common stock, secured appellant's discharge as an employee of the company; that, desiring thereafter to sell his stock, appellant had his agent and attorney, through Miller's agent and attorney, orally offer to sell the stock to Miller; and that Miller's attorney asked that appellant's offer to sell his stock be made in writing.

The amended complaint then sets out the following exchange of three letters, the first being designated in the amended complaint as an offer; the second being designated as a counteroffer; and the third being designated as an acceptance:

"Mr. William E. Herren                         March 17, 1952
"1333 Dexter Horton Building
"Seattle 4, Washington
"Dear Mr. Herren:
     "This will confirm our oral conversation of March 13th to the effect that Mr. J. I. Newsom will be willing to sell his stock in the West Wind Corporation to Mr. John K. Miller or any party whom he may designate for the sum of $25,500.00. The sale would also include a release of Mr. Newsom's claim for breach of his contract of permanent employment.

"In looking at the balance sheet of the corporation as of December 31, 1951, we note that there is a surplus in excess of $80,000.00 and it occurs to us that if the articles of incorporation permit, the stock could well be purchased by the corporation.

"The offer of this stock is made to Mr. Miller at this time pursuant to paragraph 7 of the agreement executed June 15, 1946, between Allen O. Miller, John K. Miller and J. I. Newsom.

"We would appreciate hearing from you promptly concerning this matter so that our future course of action may be determined as early as possible.

"Yours very truly,<br>
"MEIER & MURRAY<br>
"By: Ronald W. Meier"

"Meier and Murray        March 24, 1952
"1622 Northern Life Tower
"Seattle 1, Washington
"Attention Mr. Meier:
"Dear Mr. Meier:

"After receiving your letter of March 17, 1952, we have again discussed this matter with Mr. John K. Miller. While our clients recognize no claim on the part of Mr. Newsom to a contract of permanent employment of [sic] any breach thereof, they are willing merely as a matter of compromise and without prejudice to pay Mr. Newsom for all of his stock in the West Wind Corporation exactly what he originally paid for the same to-wit the sum of $10,551.35.

"This offer is made as a matter of policy for the reason that the West Wind Corporation and its share holders do not desire to have any dissatisfied stock holders in the company. If Mr. Newsom wishes to accept this offer, please let us know by April 10, 1952, otherwise the offer will be withdrawn.

"Yours very truly,<br>
"GROFF & KELLERAN<br>
"/s/ William A. Herren<br>
"By William A. Herren"

"Mr. John K. Miller        Seattle, Washington
"c/o Groff and Kelleran        April 4, 1952
"1333 Dexter Horton Building
"Seattle 4, Washington
"Dear Mr. Miller:

"The letter written by Messrs. Groff and Kelleran on March 24, 1952, addressed to my attorneys, Messrs. Meier &

Murray, in which an offer is made on your behalf to buy all of my stock in the West Wind Corporation for $10,551.35 has been referred to me by Messrs. Meier & Murray.

"After consideration of the matter I have decided to accept your offer which as stated in the letter of Messrs. Groff and Kelleran is without prejudice to any other claims of the parties. In other words, all I am selling to you is my stock in the corporation and nothing more.

"I am ready to exchange my endorsed certificates of stock for your cashier's or certified check in the sum of $10,551.35 and if you will have Messrs. Groff and Kelleran advise Messrs. Meier & Murray when you desire to close the transaction I will be ready. The transaction should be closed up promptly.

"Yours very truly,
"/s/ J. I. Newsom
"J. I. Newsom"

The amended complaint alleges that the last two of these letters effectuated a contract between appellant and Miller, whereby Miller agreed to pay $10,551.35 for appellant's corporate stock. It is further alleged that, whereas appellant is ready, willing, and able to perform, Miller has repudiated the contract.

The single question presented is whether the facts alleged in the amended complaint establish the existence of a contract to sell and purchase appellant's corporate stock. Both parties are agreed that the first letter was an offer, and the second letter was a counteroffer. They disagree as to whether the third letter was an acceptance of the counteroffer, as appellant contends, or was another counteroffer, as respondents contend. The trial court adopted the latter view.

■ Reading together the three letters, we are of the view that there was no meeting of the minds on a contract of sale and purchase. In the second letter, Miller offered to pay $10,551.35 for the stock "merely as a matter of compromise and without prejudice." The words "without prejudice" standing alone could possibly mean what appellant in the third letter assumed that they meant, i. e., "without prejudice to any other claims of the parties."

But, when it is observed that the words "without prejudice" are coupled with the immediately preceding words "merely as a matter of compromise," we do not believe the interpretation which appellant places on the words "without prejudice" is warranted.

A "compromise" is a settlement of a disputed claim by mutual concession to avoid a lawsuit. *Joyner v. Seattle,* 144 Wash. 641, 646, 258 Pac. 479; *Cannavina v. Poston,* 13 Wn. (2d) 182, 196, 124 P. (2d) 787; *Conran v. White & Bollard, Inc.,* 24 Wn. (2d) 619, 628, 167 P. (2d) 133. Hence, the word "compromise," as used in the second letter, must refer back to the disputed claim for breach of contract of employment mentioned in the first letter. There is no other disputed claim referred to in these letters or in the amended complaint. While the parties were negotiating regarding the purchase price of the stock, this in no sense involved a "disputed claim," since there is no contention that either party was obliged to buy or sell the stock.

The clear purport of the counteroffer contained in the second letter therefore is that the offer to pay $10,551.35 is made in consideration not only for delivery of the corporate stock, but in compromise settlement of the disputed claim for breach of appellant's contract of employment. Once this is understood, the significance of the words "without prejudice" becomes apparent. The *offer* to compromise the disputed claim was made without prejudice to the position of the *offeror,* in the event the offer was not accepted. This is familiar phraseology in offers of compromise, even though, as appellant tells us, an offer of compromise is always without prejudice.

It seems to us that this is the only interpretation of the second letter which gives effect to all of its language. Both appellant and respondents are agreed that an interpretation of such a writing which gives effect to all of its provisions is to be favored over one which renders some of the language meaningless or ineffective. See *Wenatchee Production Credit Ass'n v. Pacific Fruit & Produce Co.,* 199 Wash. 651, 658, 92 P. (2d) 883.

■ As appellant points out, this and other cases also announce and apply the rule that ambiguities in an instrument of this kind should be resolved against the party who prepared it. This is one of the secondary rules of interpretation. 1 Restatement of Contracts 327, § 236 (d); 3 Williston on Contracts (Rev. ed.) 1788, § 621. In view of the above analysis, we do not believe that the second letter is ambiguous. This is therefore not a proper case for application of the rule to which reference has just been made.

It may be that appellant conscientiously believed that the second letter had eliminated the settlement feature, though the explicit reference to such omission in the third letter tends to indicate that appellant did not regard the point as definitely settled. But, from a reading of the first and second letters, it is quite clear to us that Miller did not, in his counteroffer, intend to eliminate the settlement feature. Under the circumstances, there was a failure of the parties to reach a meeting of the minds, and the attempt to arrive at a contract was abortive.

The judgment is affirmed.

GRADY, C. J., DONWORTH, and FINLEY, JJ., concur.

SCHWELLENBACH, J. (concurring)—Without attempting to interpret the meaning of the letter of March 24th from the language used therein, I am satisfied, from reading all three letters, that there was no meeting of the minds between the parties, and therefore no contract.