[No. 35801.   Department Two.   August 3, 1961.]

MELBA PATTERSON, *as Executrix, Appellant,* v. EARL J. BIXBY *et al., Respondents.**

*Reported in 364 P. (2d) 10.

*Kumm, Maxwell, Petersen & Lee,* for appellant.

*Joseph T. Pemberton,* for respondents.

HUNTER, J.—This action was brought for the specific enforcement of a contract to bequeath a sum of money.

Priscilla and Frank Bixby were married in 1940. Both had been married previously, by which prior marriages each had children. In 1946, a question arose concerning the validity of Mrs. Bixby's divorce from her prior husband; thereupon, they obtained an annulment of their marriage

and separated. On February 28, 1948, Mrs. Bixby obtained a divorce from her former husband, and, thereafter and on the same day, Priscilla and Frank Bixby remarried and remained husband and wife until her death.

On February 9, 1954, Frank Bixby executed a codicil providing that,

"To my wife, Priscilla Bixby, I give, devise and bequeath, the right to live in my property at 1108 Garden Street, Bellingham, Washington, for a period of one (1) year, from the date of my death, and I further bequeath to my wife, Priscilla Bixby, and hereby authorize my executor and executrix hereinafter named in my said Will, to pay to my said wife, the sum of Twenty Thousand Dollars ($20,-000.00), in cash, PROVIDED, that my said wife make no contest of my Will and of this Codicil thereto, or any claim for any alleged community interest in my property, and in the event she should contest or refuse to sign a waiver to any alleged interest she has in my property, whether separate or alleged community interest, then this bequest shall be declared null and void and my said wife shall have and take no part of my separate property, it being the intention of myself, that the said $20,000.00, if accepted, shall be in lieu of any and all monies ordered paid by the Court, for the support of my said wife during the time my said estate shall be in the course of probation.

"I make this condition for the reason that I know the property is all my separate property and any community earnings made since marriage to my said wife, have been more than consumed in expense, since marriage."

Also on February 9, 1954, Mr. and Mrs. Bixby entered into an agreement which provided as follows:

"Frank W. Bixby, has on this date, executed a Codicil to his Last Will and Testament, which codicil provides for a bequest to Priscilla Bixby, the sum of Twenty Thousand Dollars ($20,000.00), in cash, the family automobile, and the household goods and furnishings, and for and in consideration of the execution of said codicil, the said Frank W. Bixby, agrees not to change the provisions of said codicil, making such provisions for the said Priscilla Bixby, by any future will or codicil.

"For and in consideration of said agreement, not to alter such provisions, the said Priscilla Bixby hereby agrees to waive any other claims by way of family allowance,

homestead allowance, or other claims as creditor or otherwise, against the estate of the said Frank W. Bixby, and it is mutually agreed that this agreement cannot be abrogated, altered or revoked, without the execution of a new agreement signed by both of the parties hereto."

At this time, Frank Bixby was eighty years old and was not in good health. Priscilla Bixby was fifty years old and was in apparently good health. In 1956, a guardian of the person and estate of Frank Bixby was appointed and all of his property became assets of the guardianship estate.

On September 24, 1956, Priscilla Bixby died testate. Her will was admitted to probate and the plaintiff, Melba Patterson, was duly appointed and qualified as executrix of the estate. One of the assets listed in Priscilla Bixby's estate was the claim upon which this action is based.

Frank Bixby died testate on or about January 22, 1959. His will was admitted to probate and the defendants, Earl J. Bixby and Florence Bixby Nelson, were appointed and qualified as co-executor and executrix of the estate. The codicil was never presented or admitted to probate. The assets of the estate of Frank W. Bixby, valued at approximately $90,000, consisted primarily of the remaining assets of the guardianship estate.

The plaintiff, as executrix of the estate of Priscilla Bixby, served and filed a creditor's claim upon the estate of Frank W. Bixby. This claim was served and filed only to enforce the agreement relating to the codicil; it was rejected by the defendants and this action was instituted. Neither Priscilla Bixby nor her personal representative made any claim, except the one mentioned above, against the assets of the estate of Frank Bixby.

In the complaint, the plaintiff alleged, among other things, the execution of the codicil and the agreement, full performance of Priscilla Bixby's part of the agreement, the death of Frank Bixby, and the failure of the co-executor and executrix of his estate to present the codicil to probate. In their answer, as amended, the defendants alleged, as an affirmative defense, that, among other things, the provisions of the codicil had lapsed.

The plaintiff introduced the instruments set out above as well as testimony of several persons. The defendants rested their case without offering additional evidence. Thereupon, the trial court entered findings of fact, conclusions of law and judgment in favor of the defendants dismissing the plaintiff's action, from which the plaintiff appeals.

The plaintiff (appellant) contends principally that the trial court erred in interpreting the agreement to mean that Frank Bixby's promised performance was conditioned upon Priscilla Bixby surviving him as well as her not making any claims for family allowance, homestead, debts as a creditor, or other claims.

█ In determining what bargain was made between Frank and Priscilla Bixby, we are aided by certain established rules of interpretation. See generally, Shattuck, *Contracts in Washington, 1937-1957; Part II*: 34 Wash. L. Rev. 345 at 369-377 (1959). In making this determination, we must remember that "courts do not have the power, under the guise of interpretation, to rewrite contracts which the parties have deliberately made for themselves." *Chaffee v. Chaffee*, 19 Wn. (2d) 607, 145 P. (2d) 244 (1943).

█ Language in a contract will be given its ordinary meaning unless a sufficient reason exists to apply another meaning. *Rew v. Beneficial Standard Life Ins. Co.*, 41 Wn. (2d) 577, 250 P. (2d) 956, 35 A. L. R. (2d) 891 (1952); *Jack v. Standard Marine Ins. Co.*, 33 Wn. (2d) 265, 205 P. (2d) 351, 8 A. L. R. (2d) 1426 (1949). Language will be given the meaning which best gives effect to the intention of the parties. *Crofton v. Bargreen*, 53 Wn. (2d) 243, 332 P. (2d) 1081 (1958). As we said in *Smith v. Smith*, 56 Wn. (2d) 1, 351 P. (2d) 142 (1960),

". . . where one construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the interpretation which makes it a rational and probable agreement must be adopted. . . ."

█ A contract should be interpreted as a whole, making the over-all meaning and purpose controlling. *Sibbald*

*v. Chehalis Sav. & Loan Ass'n*, 6 Wn. (2d) 203, 107 P. (2d) 333 (1940). Every portion of a contract should be interpreted so as to carry out, if possible, the over-all purpose. *Jack v. Standard Marine Ins. Co., supra.* The circumstances under which the contract was made may be considered so that the court may be able to place itself, as nearly as possible, in the position of the parties to the contract at the time of its execution. *Kelly v. Valley Constr. Co.*, 43 Wn. (2d) 679, 262 P. (2d) 970 (1953).

With these rules of construction in mind, we will consider the agreement. Frank Bixby expressed his undertaking to be that he "agrees not to change the provisions of said codicil," after having designated the codicil and the bequest made in it. The plaintiff states this constituted a promise to bequeath $20,000 to Priscilla Bixby. The defendants (respondents), not taking issue with this, concede this construction.

Priscilla Bixby expressed her undertaking to be "to waive any other claims by way of family allowance, homestead allowance, or other claims as creditor or otherwise, against the estate of the said Frank W. Bixby."

The disagreements of the parties in this appeal, disclosed by their contentions, are these: (1) Was Priscilla Bixby's undertaking a promise to forbear from doing certain things after Frank Bixby's death, or was her undertaking a present act—that is—a waiver of certain rights which she could exercise only after his death? (2) In the event her undertaking was a promise to forbear from doing certain things after his death, was his performance conditioned upon her survival?

■ We are of the opinion that Priscilla Bixby's undertaking in the agreement was a promise to forbear from presenting or making certain claims after Frank Bixby's death. In the agreement, she used the words, "agrees to waive." This is merely another way of saying, "I promise to waive" or "I promise not to exercise a right." Therefore, after Frank and Priscilla Bixby signed this document, it constituted an executory bilateral contract. *Saletic v. Stamnes*, 51 Wn. (2d) 696, 321 P. (2d) 547 (1958). The

performance which she promised was, in essence, her forbearance from making or presenting any "claims by way of family allowance, homestead allowance, or other claims as creditor or otherwise, against the estate of the said Frank W. Bixby . . ." if and when any occasion for making such claims might arise.

We are further of the opinion that Frank Bixby's duty to perform was conditioned upon her surviving him. Some of the acts contemplated to be performed by her could not be performed by her personal representative. A claim for family allowance is personal to the surviving spouse and does not survive. *State ex rel. Case v. Superior Court*, 23 Wn. (2d) 250, 160 P. (2d) 606 (1945). The right to a homestead allowance under RCW 11.52.010, is also personal to the surviving spouse since the *surviving spouse* must file a petition in order that the award may vest. Since only she could make or present these two claims, only her promise to forbear from doing so would be of any value to him. There would be no reason for Frank Bixby to bargain for her personal representatives or heirs not to do something which her personal representatives or heirs could not do. Considering that we must construe each portion of the agreement in a manner so as to avoid ineffectiveness (*Smith v. Smith, supra*), the parties must have intended the promised forbearance be performed by her, personally. Since these claims could be made or presented, or forborne from being made or presented, only after his death, her survival must have been intended as a necessary condition to his duty to perform.

Furthermore, since the time for the performance by Priscilla Bixby of her part of the bargain was contemplated to be after his death, her predecease caused substantial performance by her to become impossible. Therefore, he became discharged from the duty of performing his promise (12 Am. Jur. Contracts § 375 (1938); Restatement, Contracts § 282 (1932)), which could not be specifically enforced thereafter by the executrix of her estate.

However, the plaintiff contends that where the promised performance is forbearance and the promisor

dies prior to the time contemplated for the performance, there is no failure of consideration where that which the promisor promised to forbear from doing was, in fact, not done by anyone. Under the circumstances of the instant case, this contention is untenable. Here the parties contemplated that Mrs. Bixby should survive her husband and the acts of forbearance should be performed after his death for the reason that Mrs. Bixby would then be giving up certain rights which were hers as a matter of law, some of which could not be exercised by anyone else. Therefore, when Mrs. Bixby failed to survive her husband, the substantial purpose of the parties was thwarted by her inability to perform substantially, and his obligation to perform was discharged.

The plaintiff has interposed a motion in this court to strike defendants' supplemental statement of facts containing exhibit No. 7. We decline to pass on the motion for the reason that consideration of exhibit No. 7 was not necessary for our disposition of the case.

The judgment of the trial court dismissing the plaintiff's action is affirmed.

FINLEY, C. J., MALLERY, DONWORTH, and ROSELLINI, JJ., concur.

---

September 21, 1961. Petition for rehearing denied.