[No. 37632.    En Banc.    October 7, 1965.]

CLARENCE TUCKER, *Respondent*, v. BANKERS LIFE AND CASUALTY Co., *Appellant*.*

*Reported in 406 P.2d 628.

*Leavy & Taber*, by *James Leavy*, for appellant.

*Horton & Wilkins*, by *Hugh B. Horton*, for respondent.

HUNTER, J.—This is an action by Clarence Tucker, plaintiff (respondent), against Bankers Life & Casualty Company, defendant (appellant), to recover total disability benefits under a Bankers Life accident-insurance policy purchased by the plaintiff.

The trial court awarded the plaintiff judgment for the maximum benefits afforded under the policy for total disability. The defendant appeals.

The defendant first contends that the trial court erred in finding that the plaintiff's injury was caused by an accidental fall, arguing that the fall resulted from a weakness of the plaintiff's back due to an osteoarthritic condition.

The record shows that the plaintiff was in the process of unloading a bulldozer cutter blade from a station wagon when he fell. The factual questions posed before the trial court were whether the plaintiff slipped and fell, causing the injury to his back, or whether his back "gave way" from the weakened condition, causing the fall.

The evidence most favorable to the plaintiff on this issue is contained in exhibit 2, entitled, "Claimant's Statement for Accident or Illness," a form furnished by the de-

fendant insurance company. The statement contained the following:

> 4. If accident, how did it occur? [answer by plaintiff] Unloading equipment *Equipment slipped—caused fall & injury.* (Italics ours.)

A subsequent form filed by the plaintiff (a part of exhibit 2) contained the following:

> 4. If accident, how did it occur? [answer] *Co. has record on Previous claim—Back hurt—on job.* (Italics ours.)

The plaintiff testified on cross-examination:

> Q. On March 21st, as I understand the injury, nothing dropped or fell—you were merely picking up a 150 pound weight and suddenly felt a pain in the back, is that right? A. Well, I went down, with it. Q. I beg your pardon? A. I fell down, with it. Q. You fell down with the 150 pounds? A. *Yes, I started to turn around to let it down, why I fell down with it.* (Italics ours.)

■ The trial court had a right to believe the foregoing statements and testimony of the plaintiff, even though they appeared inconsistent with other testimony to the effect the plaintiff fell by reason of his back "going out." *Mutti v. Boeing Aircraft Co.*, 25 Wn.2d 871, 877, 172 P.2d 249 (1946); *Sawyer v. Department of Labor & Indus.*, 48 Wn.2d 761, 296 P.2d 706 (1956); *Miller v. Treat*, 57 Wn.2d 524, 358 P.2d 143 (1960). In *Mutti v. Boeing Aircraft Co., supra*, we said:

> A challenge to the sufficiency of the evidence, or a motion for nonsuit, admits the truth of the plaintiff's evidence and all inferences which reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant, and in the light most favorable to plaintiff. In the determination of such challenge or motion, *even though the plaintiff's evidence is in some respects unfavorable to him, he is not bound by the unfavorable portion of such evidence, but is entitled to have his case submitted to the jury on the basis of the evidence which is most favorable to his contention. Lindberg v. Steele*, 5 Wn. (2d) 54, 104 P. (2d) 940. (Italics ours.)

Considering the evidence in a light most favorable to the plaintiff, the trial court, as trier of the fact, could have

concluded that in removing the cutter blade from the station wagon there was an accidental slipping which caused the fall, resulting in the injury to the plaintiff's back.

The defendant argues that the plaintiff's pre-existing bodily infirmity of osteoarthritis constituted a concurring cause of the injury, if not the sole cause, and that recovery under the policy was thereby defeated since it provides no indemnity if loss results from "(a) bodily or mental infirmity, or (b) sickness or disease, . . . ."

■ In order for the trial court to find, under the facts of this case, that the plaintiff sustained an accidental injury, it was necessary for it to find that the plaintiff's back "went out" by reason of the accidental slipping. The plaintiff's bodily infirmity was then a *condition* and not a proximate cause of the injury. As stated in *Graham v. Police & Firemen's Ins. Ass'n*, 10 Wn.2d 288, 296, 116 P.2d 352 (1941):

"The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury." *Driskell v. United States Health & Acc. Ins. Co.*, 117 Mo. App. 362, 93 S.W. 880.

The pre-existing infirmity therefore does not prevent recovery under the policy. *Graham v. Police & Firemen's Ins. Ass'n, supra*; 45 C.J.S. *Insurance* § 776.

The defendant further assigns error to the trial court's finding that the plaintiff was totally disabled, as defined under the terms of the policy.

The trial court found:

5. That since March 21, 1962, plaintiff has been totally disabled insofar as the intent and purpose of the policy of insurance is concerned, and has been unable from and after said date to perform any of his regular and customary duties or occupation and has received no remuneration in connection with his regular and cus-

tomary occupation as the same existed at the time of the accident and had existed for many years prior thereto.

The policy provides benefits of $200 per month for total disability resulting from an accidental injury. Section 3 provides:

TOTAL DISABILITY: If benefits and premiums for this Section are specified in the Schedule on the last page hereof and if injuries, within twenty days from the date of the accident, shall wholly, necessarily, and continuously disable the Insured, and shall require regular care and attendance by a legally qualified physician or surgeon, other than himself, and shall prevent the Insured from performing each and every duty or function, of his regular and customary occupation and shall cause total loss of business time, the Company will pay monthly, during the period of such disability and such total loss of time, beginning with the first day after the elimination period, at the rate of the monthly indemnity set out in the Schedule for this Section but not to exceed twelve months as the result of any one accident. Thereafter, so long as the Insured, as the result of such injuries, shall require regular care and attendance by a legally qualified physician or surgeon, other than himself, and shall be prevented, due to such injuries, from performing each and every duty or function of any occupation and shall suffer total loss of business time, the Company will pay during the continuance of such disability at the rate of the monthly indemnity set out in the Schedule [for an additional 12 months].

The record shows that the plaintiff went to Dr. Kopper, a chiropractor, on the day of his injury, March 21, 1962. The plaintiff testified as follows: that Dr. Kopper told him not to work; that he first consulted Dr. Pettee, a physician and surgeon, on March 31, 1962; that from the date of his injury plaintiff's employer retained him on the payroll in a supervisory capacity during which period he performed none of his customary and usual duties of heavy duty mechanic and welder; that on June 18 he again consulted Dr. Pettee and was told to quit work, but continued working in a supervisory capacity until June 22 to permit his employer to secure a replacement.

The physician's statement, completed by Dr. Pettee on the form furnished by the defendant company, a part of exhibit 2 dated July 18, 1962, recites:

12. Dates patient was disabled from performing usual duties [answer] Totally from 6-22-62 to still disabled

A further statement of Dr. Pettee on a like form in exhibit 2, dated November 21, 1962, recites:

12. Dates patient was disabled from performing usual duties [ answer] Totally from Aug 20, 1962 He will be unable to return to former occupation as bulldozer operator

The latter statement further recites:

9. Dates you treated patient for this condition [answer] 7-16-62 8-6-62 8-20-62 9-4-62 At office [answer] 9-17-62 10-8-62 10-26-62 from July 17 thru Nov 19th therapy at Our Lady of Lourdes Hospital At hospital 7-5-62 thru 7-11-62

There is testimony of the plaintiff which in some respects is conflicting with the foregoing evidence and testimony, in that the plaintiff testified that Dr. Pettee told him he could try welding where it involved no lifting. However, considering the above record in a light most favorable to the plaintiff, which the trier of fact was entitled to do, we believe that there is substantial evidence to support the trial court's findings that the plaintiff was totally disabled from performing the duties of his regular and customary occupation, thereby qualifying him for maximum benefits under the first 12-month period of the policy.

The defendant argues that the plaintiff cannot qualify for total disability benefits for the first 3 months while employed in a supervisory capacity.

The trial court found that the duties were not related to the performance of the duties of his regular and customary occupation. The record supports this finding.

■ The defendant contends that the requirement that the plaintiff suffer total loss of business time was intended by the parties to mean that the insured could recover benefits only if he were totally disabled from performing

each and every duty or function of *any occupation.* Relative to the first 12-month period we believe that the provision as to total loss of business time relates to the inability of the plaintiff to perform the duties of his regular and customary occupation. Otherwise, inclusion of the phrase, "performance of the duties of his regular and customary occupation," would be meaningless. We have said that a writing which gives effect to all of its provisions is to be favored over one which renders some of the language meaningless or ineffective. *Newsom v. Miller,* 42 Wn.2d 727, 730, 258 P.2d 812 (1953); *Patterson v. Bixby,* 58 Wn.2d 454, 458, 364 P.2d 10 (1961).

The defendant argues that in no event can the plaintiff recover benefits for the second 12-month period since the policy provides that the insured must be totally disabled from performing "each and every duty or function of *any occupation* and shall suffer total loss of business time." (Italics ours.)

█ We agree. The first and second 12-month periods are treated in separate categories in section 3 of the policy. In the second period, the phrase relative to the performance of the duties of "his regular and customary occupation" is omitted and the language "any occupation" is substituted. The rule is well settled that we may not modify clear and unambiguous language in an insurance contract. *McKillips v. Railway Mail Ass'n,* 10 Wn.2d 122, 130, 116 P.2d 330 (1941); 149 A.L.R. 19, 152; *Kuhnle v. Mutual Life Ins. Co.,* 20 Wn.2d 255, 265, 147 P.2d 281 (1944); *Patterson v. Bixby, supra;* 45 C.J.S. *Insurance* § 898 b(2). In construing a similar provision in the case of *McKillips v. Railway Mail Ass'n, supra,* we said:

> The wording of the certificate before us, above quoted, is definite and precise. The language of the paragraph providing for benefits in case of permanent disability, while not referring to the insured's ordinary occupation, makes it a condition of liability under the policy that the insured shall be wholly incapacitated from performing *any labor or following any occupation.* This. language is plain and unambiguous, and the courts have no authority to enlarge appellant's liability under its

contract beyond the plain terms thereof. As stated by the circuit court of appeals, in *Metropolitan Life Ins. Co. v. Foster*, 67 F. (2d) 264:

"The parties were free to contract for any risks they chose, adjusting the premium charge to the risks assumed. . . . We have no more right to enlarge the liability by artificial construction of the policy than to increase the penalty of a bond or raise the face of a promissory note." (Italics ours.)

The record does not show whether the plaintiff sustained such a disability as would qualify him for the benefits under the second 12-month period, as provided in the policy.

The judgment awarding the plaintiff maximum benefits for the first 12-month period is affirmed. The judgment awarding the plaintiff benefits for the second 12-month period is reversed, and the cause remanded for further trial for the taking of testimony as to whether plaintiff is entitled to benefits for such period or any part thereof, in accordance with the views expressed in this opinion.

Costs will abide the final determination of the cause.

ROSELLINI, C. J., FINLEY, WEAVER, OTT, HAMILTON, and HALE, JJ., concur.

HILL, J. (dissenting)—I dissent because I do not believe that there is substantial evidence to sustain the trial court's finding that the plaintiff "was involved in an accident," and would therefore direct a dismissal.

This was an action to recover disability payments provided by an accident insurance policy.

To recover, the plaintiff had to prove that his disability was caused by an accident.

The trial court found,

That said policy was in full force and effect on March 21, 1962. That on said date plaintiff was involved in an accident and sustained an injury to his back which caused losses as referred to in Section 3 of the aforesaid policy. (Finding of Fact 3)

This is a finding of ultimate fact, with no indication as to the circumstances on which that finding was based.

The plaintiff was the only witness, and his testimony[1] does not sustain that finding. His testimony was that he was employed as a heavy-duty mechanic and welder and, as a routine part of his job, he was sliding a bulldozer-cutting blade, weighing 150 to 200 pounds, from his station wagon to mount it on a bulldozer and, as he was turning around, his back went out on him and he fell. He did not injure his hands or any other part of his body, and he fell only because his "back gave out."

---

[1]The entire testimony regarding the manner in which plaintiff was injured is given here:

"Q. Would you tell the Court what you were doing at the time that you were injured? A. I was unloading a bulldozer cutting edge out of my station wagon which weighs at random I can't tell you exactly the weight is—between 150 to 200 pounds. I was sliding it back and I picked it up to turn it around to lay it down— Q. And what happened at that time? A. My back went out."

Cross examination:

"Q. On March 21st, as I understand the injury, nothing dropped or fell—you were merely picking up a 150 pound weight and suddenly felt a pain in the back, is that right? A. Well, I went down, with it. Q. I beg your pardon? A. I fell down, with it. Q. You fell down with the 150 pounds? A. Yes, I started to turn around to let it down, why I fell down with it. Q. In other words your back suddenly gave way and previous to this time, you had often picked up weights of this same amount? A. That never bothered me, that little weight, at any time before, no.

" . . .

"Q. Now, as I understand the accident, this may be repeating, but as I understand the accident, what happened was you lifted a weight of around 150 pounds and you turned to place it or to move it, is that right? A. I was going to lay it down. Slide it—it is around twelve feet long, and I would slide it out of my station wagon and just turned around to lay it down and I would then get in my station wagon and drive away and drive a bull dozer up there and let it down and put it on. Just take one end and slip it on and stick a pin through it and— Q. What you actually did was, you took it out of the pick up turned, and as you were laying it down, is that what—when your back gave way on you? A. It was just as I was turning— Q. Your back gave way? A. Yes. Q. And then you fell with it, is that right? A. That is right. Q. You didn't injure your hands or any other part of your body in the fall, did you? A. No. Q. Then after that, I mean you fell with it because your back gave out, what did you do? Were you alone at the time? A. I was."

We have here no unforeseen incident; it is simply the unexpected result of the insured's voluntary act. That this does not constitute an accident within the purview of an accident insurance policy is clearly stated in *Evans v. Metropolitan Life Ins. Co.*, 26 Wn.2d 594, 622, 174 P.2d 961 (1946). This court, after an extensive examination of the authorities (covering some 19 pages), said:

> The conclusion we must reach from a consideration of all the cited cases is that accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.
>
> It will be noted that the above conclusion is contrary to the decisions in the *Horsfall* and *Bennett* cases. Those cases are therefore overruled.

The *Evans* case is particularly important because it specifically overruled *Horsfall v. Pacific Mut. Life Ins. Co.*, 32 Wash. 132, 72 Pac. 1028, 98 Am. St. Rep. 846, 63 L.R.A. 425 (1903), and *Bennett v. Mutual Trust Life Ins. Co.*, 21 Wn.2d 698, 152 P.2d 713 (1944), which had held that death or injury is accidental, even though the means are intentional, where the results are unusual, unexpected, or unforeseen.

The *Evans* case has been reaffirmed in *McMahan v. Mutual Benefit Health & Acc. Ass'n*, 33 Wn.2d 415, 206 P.2d 292 (1949); *Bennett v. Metropolitan Life Ins. Co.*, 35 Wn.2d 284, 212 P.2d 790 (1949); and *Johnson v. Business Men's Assur. Co.*, 38 Wn.2d 245, 249, 228 P.2d 760 (1951). In the latter case, it is said:

> The rule is now firmly established in this state that, in order to recover under a policy insuring against death or injury by accidental means, (1) it is not enough that the *result* was unusual, unexpected or unforeseen, but it must appear that the *means* were accidental; and (2) accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.

Further elaboration is unnecessary on this proposition of law, as it is not controverted by the majority. Instead, the majority takes the position that there is evidence to sustain the trial court's finding that there was an accident.

Unable to find that evidence in the plaintiff's testimony, the majority turns to exhibit No. 2, the "CLAIMANT'S STATEMENT FOR ACCIDENT OR ILLNESS," admitted in evidence to establish that a claim was made as required by the policy. Question No. 4 therein was: "If accident, how did it occur?" And the answer was: "Unloading equipment, equipment slipped—caused fall and injury."

The majority says that the trial court had the right to believe the foregoing unsworn and uncross-examined statement of the plaintiff in the face of his sworn testimony wherein there is no suggestion that the equipment slipped and caused his fall. I will not argue as to what the trial court is entitled to believe. That is not the test at this stage of the proceedings. The test here is whether there is ample or substantial evidence to support the finding of the trial court. *Paduano v. J. C. Boespflug Constr. Co.,* 66 Wn.2d 527, 403 P.2d 841 (1965), to *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). Exhibit No. 2 is not, in my opinion, substantial evidence of anything except that a claim was filed.

From a reading of the trial judge's oral opinion, it seems to me that he simply disagrees with our current definition of what constitutes an accident; and, in that view, he has very respectable authority supporting him. However, as I have pointed out, that definition is not under attack.

On this appeal, the applicable law is as heretofore stated, we have left an issue of fact. If there is substantial evidence to sustain the trial court's finding that the plaintiff's injuries were due to an accident, as that term is defined by this court, the majority is right. If there is no substantial evidence to sustain that finding, the action should be dismissed. I would dismiss the action.

DONWORTH, J., concurs with HILL, J.