Annabell M. WILLIAMSON, Administratrix of the Estate of Lee A. Williamson, Deceased, Appellant,

v.

WEYERHAEUSER TIMBER COMPANY, a Corporation, Appellee.

No. 13493.

United States Court of Appeals
Ninth Circuit.

April 11, 1955.

McCarty, Dickson & Swindells, William L. Dickson, William Miller, Portland, Or., for appellant.

Wilbur, Mautz, Souther & Spaulding, Robert T. Mautz, Portland, Or., for appellee.

Robert Y. Thornton, Atty. Gen., Ray H. Lafky, Roy K. Terry, T. Walter Gillard, Vernon D. Gleaves, Asst. Attys. Gen., intervenors and amici curiae.

Before HEALY, POPE and CHAMBERS, Circuit Judges.

POPE, Circuit Judge.

The appellant instituted an action in the district court for the district of Oregon based on the wrongful death statute of the State of Washington[1] to recover damages for the death of the above named decedent alleged to have been caused by the negligence of the appellee. This appeal is from the judgment that the plaintiff recover nothing and that her complaint be dismissed.

Lee A. Williamson was an employee of Wood Tractor Company, an Oregon corporation, which was a dealer in tractors and other industrial machinery. It held a franchise for the sale of Allis-Chalmers industrial equipment in portions of Washington and Oregon. Its office, warehouse and repair shops were

---

1. Rem.Rev.Stat. §§ 183 and 183–1.

located at Portland. In addition to selling such equipment it regularly serviced and repaired equipment belonging to its customers within the area covered by its franchise. Williamson was employed as a tractor mechanic and as such was called upon to repair and service such equipment at the customers' places of business both in Oregon and Washington. During 1949 he worked approximately 16 per cent of his time in Washington and in 1950, up to April 25, the date of his death, he worked approximately 30 per cent of his time in that State. He was ordinarily called upon by his employer to service and repair the equipment sold to Weyerhaeuser Timber Company. At the time of the accident which caused his death, Williamson had gone to the location of one of the Weyerhaeuser operations in Washington for the purpose of servicing and starting two new machines that the timber company had recently purchased. He was killed through the operation of a logging truck owned by that company. Plaintiff contended that the logging truck had been operated in a negligent manner which caused the death.

The Wood Tractor Company, Williamson's employer, was engaged in hazardous employment within the meaning of the workmen's compensation law of Oregon and it had elected to be subject to that act.[2] Under the Oregon law it was possible for a workman employed and working in Oregon to be covered for accidental injuries during the time he was temporarily absent from the State "if at the time of the accident he was not subject to the workmen's compensation law of the jurisdiction in which he was injured."[3] The widow, Annabell M. Williamson, on behalf of herself and her minor son, filed a claim for compensation on account of the death of her husband with the Oregon Industrial Accident Commission seeking benefits payable under this Act. Her claim was allowed and she was still receiving compensation at the time of the trial. She also filed a timely claim for compensation under the Washington Workmen's Compensation Act, RCW 51.04.010 et seq., with the appropriate board in the State of Washington. At the time of the trial in the court below that claim had not been acted upon.[4]

2. O.C.L.A. §§ 102–1701 to 102–1785.

3. "102–1731. Workmen injured while temporarily absent from state: Judicial notice of laws of other state: Filing claim after denial in other state. If a workman employed to work in this state and subject to this act temporarily leaves the state incidental to such employment and receives an accidental injury arising out of and in the course of his employment, he shall be entitled to the benefits of this act as though he were injured within this state, if at the time of the accident he was not subject to the workmen's compensation law of the jurisdiction in which he was injured. Whenever in any appeal or other litigation the construction of the laws of another jurisdiction shall be required, the courts shall take judicial notice thereof. If any such workman shall file, in the jurisdiction in which he is injured, a claim for an accidental injury and the claim shall be denied for the reason that he was not subject to the workmen's compensation law of such jurisdiction, he may file a claim for such injury under this act within 60 days after the order denying his claim became final."

4. On the date of the argument of the case before this court the Attorney General for the State of Oregon, on behalf of the Oregon Commission, which had filed an amicus curiae brief, filed an "Addendum Amicus Curiae Brief" asserting that on May 26, 1954, approximately two years after the date of the judgment of the court below, the Department of Labor and Industries of the State of Washington made an order rejecting Mrs. Williamson's claim and setting out what is alleged to be a copy of that order. The copy recites that the Wood Tractor Company had not reported or applied for coverage under the Washington law but was covered by the Oregon law and that since the Oregon Commission had assumed jurisdiction by allowance and payment of the Oregon claim it was ordered that the claim filed in Washington be rejected. There is no assertion that this later order could have any effect upon the court's earlier judgment. If it is offered here as persuasive authority as to whether Williamson came within the Act, it fails in that purpose for the order does not purport to deal with that question, as it merely denies compensation because the

It was the contention of the defendant timber company that the action here was barred by the provisions of the Workmen's Compensation Act of Washington and the parties stipulated that such issue should be segregated as a preliminary issue to be tried and determined by the court sitting without a jury. Upon such trial of that issue the court made findings of fact and conclusions of law holding and concluding that at the time of the fatal injury Williamson and his employer Wood Tractor Company were subject to the provisions of the Washington Act; that the accident which caused the death involved a workman in extra-hazardous employment who suffered fatal injuries "on the premises of and in connection with the employment of an employer [Weyerhaeuser] engaged in extra-hazardous employment"; and that under such circumstances the dependents of such workman could not recover damages from the timber company. Judgment was entered accordingly.

Upon this appeal it is urged that Williamson was not covered by or subject to the provisions of the Washington Act; that the question of the appellant's right to bring a suit against a third party to recover for the death is governed by the provisions of the Oregon Act; that the section of the Washington Act which the trial court held barred this action conflicts with the public policy of Oregon and should have been disregarded by the trial court; and that in any event that section of the Washington Act must be given a construction permitting this action if it is to avoid invalidation as unconstitutional.

■■ Manifestly the trial court was required to decide initially which law governed its determination as to whether plaintiff had a cause of action. The suit was one to recover damages for wrongful death resulting from the timber company's alleged negligence,—an action for tort. As this was a diversity of citizenship case, the court below sitting as a federal court in Oregon must conform to the conflict of laws rules prevailing in Oregon's state courts. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477; Wallan v. Rankin, 9 Cir., 173 F.2d 488, 490. The common statement of the rule is that an action in tort is governed by the law of the jurisdiction where the tort was committed. "The law of the place of wrong governs the right of action for death". Restatement, Conflict of Laws, § 391. This rule is recognized and discussed at length by the Supreme Court of Oregon in the case of Bowles v. Barde Steel Co., 177 Or. 421, 164 P. 2d 692, 162 A.L.R. 328.[5] Considering that determination of the question of liability must be based upon the law of Washington, the trial court held that under the law of that State, the acts which resulted in Williamson's death did not give rise to any cause of action.

This holding was premised upon the court's conclusion, mentioned above, that at the time of the fatal injury Williamson and his employer "were subject to the provisions of the Workmen's Compensation Act of Washington". It had been stipulated in connection with the pre-trial order that "at the time of said fatal accident, the deceased was an employee of Wood Tractor Company, an Oregon corporation, and he was on the premises of the defendant to inspect and service logging equipment sold to the defendant by his employer". The opinion of the trial judge makes it plain that as he observed the issues presented, his attention had not been called to any contention that at the moment of the fatal injury Williamson was not acting in the course of his employment. That he was so acting appears to have been taken for granted at the trial. We shall find it necessary, hereafter, to deal with that precise question. Initially, however, we must inquire whether, assuming that

Oregon Commission has "assumed jurisdiction".

5. It would appear that much that was

there said was unnecessary to the decision in that particular case, but if the statement was dictum, there appears to be no evidence of any contrary rule in Oregon.

Williamson was then acting in the course of his extra-hazardous employment, the court correctly held that the acts charged to the defendant gave rise to no cause of action.

As disclosed by the case of Koreski v. Seattle Hardware Co., 17 Wash.2d 421, 135 P.2d 860, 864, the statutes of the State of Washington have, at least since 1929, provided that there does not exist in that State a right of action for an injury sustained in an industrial accident arising out of circumstances such as those which caused the death of Williamson. Seattle Hardware Company was an employer engaged in extra-hazardous work within the meaning of the Washington Workmen's Compensation Act. It had qualified under the provisions of that Act. Koreski, the plaintiff, was not an employee of the Seattle Hardware Company. He was, however, an employee of Ace Electric Motor Service Co. and as such was engaged in repairing an electric motor on the premises of the hardware company. The Ace Electric Motor Service and Koreski were likewise engaged in extra-hazardous work within the meaning of the Washington Act. Although Koreski's employer had failed to report to the Director of Labor and Industries that Koreski was carried on its payroll, and it paid no premium to the industrial insurance fund on account of his employment, it was held that the Seattle Hardware Company, by qualifying under the Washington law and making payments into the State's industrial insurance fund, made a rateable contribution for the protection "not of its own employees alone, but of the whole body of employees of the state engaged in extrahazardous industry"; hence that the Washington Act expressly granted to the Seattle Hardware Company an immunity from suit not merely by its own employees but by any workman in the State who was engaged in the employment of *any* employer coming under the Act. The court said: "As appellant [Seattle Hardware Company] complied with the terms of the Workmen's Compensation Act immunity from liability for negligently injuring respondent, who was the employee of another employer, is a benefit to which appellant is entitled under the act." The salient portions of the Washington Act's immunity provision as quoted and emphasized in an opinion in the recent case of Latimer v. Western Machinery Exchange, 42 Wash.2d 756, 259 P.2d 623, 628, are as follows: " '*Workman* means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: *Provided, however,* That if the injury to a *workman* is due to the negligence or wrong of another not in the same employ, the injured *workman* \* \* \* shall elect whether to take under this act or seek a remedy against such other \* \* \* *Provided, however, That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extra-hazardous employment under this act.* \* \* \* ' Rem.Rev.Stat.(Sup.) § 7675." Furthermore, the Washington court held that the failure of Koreski's employer to report his name and pay to the Department of Labor and Industries, which may have resulted in his not being able to collect benefits from the Workmen's Compensation fund, did not operate to permit Koreski to retain his common law right of action. The court said: " 'Appellant has complied with the act, therefore it may not be penalized by non-compliance with the act by respondent's corporate employer.' " In this the court was following its earlier decision in Samarzich v. Aetna Life Ins. Co., 180 Wash. 379, 40 P.2d 129.

Here it was agreed by the parties in the pre-trial order that Williamson at the time of the accident was upon the property of the timber company pursuant to his employment by Wood Tractor Company which had recently sold several caterpillar units to the timber company; that the timber company was an employer engaged in extra-hazardous employ-

ment within the meaning of the Washington law; that it had complied with that law; and that it was operating thereunder and subject to it. The trial court found that the operations of the Wood Tractor Company in Washington were classified as extra-hazardous employment under that State's Act, although at the time of the fatal accident Wood Tractor Company had not complied with the Act nor qualified as a foreign corporation in Washington.[6]

Assuming for the time being, as the trial court did, that at the moment of the injury Williamson was acting in the course of his employment, it would be apparent that under such circumstances Williamson was a "workman" within the meaning of the Washington Act; that he and his employer were subject to its provisions and that the timber company was, under the rule in the Koreski case, supra, not liable for his injury or death. Under the Washington statute and decisions no cause of action arose.

Appellant argues that these rules of Washington law should not be applied in the State of Oregon because they conflict with the public policy of that State; hence the Oregon courts would refuse to follow the Washington decisions and the statute therein construed, and therefore the federal court sitting in Oregon must do likewise. Appellant calls attention to the fact that under the Oregon Workmen's Compensation Act, the workmen who are injured through the negligence or wrong of a third person may elect whether to take under the Act or recover damages from such third person; and in case of the first election action may be brought against the third person for the benefit both of the Oregon commission and of the workman.[7] Appellant further says that the purpose of the Act is to minimize the burden upon the industrial accident fund and also to secure the largest possible recovery from third party wrongdoers.

As evidence of an Oregon policy not to recognize defenses under the workmen's compensation acts of other states, appellant cites Rorvick v. North Pacific Lumber Co., 99 Or. 58, 190 P. 331, 195 P. 163, and Personius v. Asbury Transportation Co., 152 Or. 286, 53 P.2d 1065, 1075. The first of these cases involved an action in Oregon to recover damages for injuries inflicted in that State and resulting in the death of plaintiff's husband. The plaintiff had been awarded compensation under the California Workmen's Compensation Act which provided that the making of such a claim operated as an assignment to the decedent's employer of any right to recover damages against any other party. It was pleaded as a defense that because of this assignment plaintiff could not bring the action in her own name. The Oregon court rejected such defense on the ground that a cause of action in tort arising in Oregon was not assignable under Oregon law, and it refused to recognize the existence of any assignment pursuant to a California statute as such would be an infringement upon the law of the forum. In the Personius case, supra, plaintiff resided in Idaho and his contract of employment was there. He brought an action in Oregon against a defendant third party to recover damages for injuries re-

---

6. In 1947 Wood Tractor Company had been notified by the Washington Department of Labor and Industries that its operations in the State of Washington were subject to the Washington Act and it was advised to open an account with the Department as "your work brings you within the scope of our Act."

7. The Act provides, O.C.L.A. § 102–1729: " * * * If the workman or other beneficiaries elect to take under this act, the commission may bring action against such employer or third person in the name of the injured workman or other beneficiaries. Any sum recovered by the commission in excess of the expenses incurred in making such recovery and the amount expended by the commission for compensation, first aid or other medical, surgical or hospital service, together with the present worth of the monthly payments of compensation to which such workman or other beneficiaries may be entitled under the terms of this act, shall be paid such workman or other beneficiaries as hereinafter provided."

ceived at the hands of that third party in the State of Oregon. Defendant pleaded that plaintiff had elected to claim benefits under the Idaho Workmen's Compensation Act which provided that the acceptance of those benefits resulted in an assignment to the employer of the cause of action against the defendant. The Oregon Court refused to recognize such an assignment, relying upon the Rorvick case, stating that "The prohibition imposed on the Idaho courts has no extraterritorial effect on the courts of this state."

■ The Oregon court has recognized that the occasions for refusing to enforce rights created by the laws of another jurisdiction because of the State's public policy should be extremely limited. Bowles v. Barde Steel Co., supra, citing 3 Beale, Conflict of Laws, § 612.1. And in McGirl v. Brewer, 132 Or. 422, 280 P. 508, 285 P. 208, at page 213, the court stated that before this extraordinary rule should be applied "there must be something which offends by shocking moral standards, or is injurious or pernicious to the public welfare." In that case the court referred to the oft-quoted statement of Justice Cardozo in Loucks v. Standard Oil Co., 224 N.Y. 99, 120 N.E. 198, 201: "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home."

We might well doubt that the Oregon court would apply this so-called public policy rule to the Washington system of workmen's compensation merely because it is based upon an entirely different theory than that adopted in Oregon, but we find it unnecessary to consider that question for if it be assumed that the Oregon Supreme Court would refuse for some such reason to give any respect whatever to the Washington statute, it would at once be confronted with the problem of ascertaining what law it would then apply in judging the acts of the timber company. After all, they occurred in the State of Washington and the question is whether what defendant did gave rise to a cause of action.

■ Oregon has a wrongful death act. Admittedly it could have no application here. This action, it is conceded, is instituted pursuant to the Washington wrongful death act. Manifestly if the law of Washington says no cause of action arose, no Oregon court could by application of any rule of the State of Oregon make the conduct here complained of actionable. As stated by Mr. Justice Holmes in American Banana Company v. United Fruit Company, 213 U.S. 347, 356, 29 S.Ct. 511, 513, 53 L.Ed. 826, "But the general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done. * * * For another jurisdiction, if it should happen to lay hold of the actor, to treat him according to its own notions rather than those of the place where he did the acts, not only would be unjust, but would be an interference with the authority of another sovereign, contrary to the comity of nations, which the other state concerned justly might resent."

■ As the trial judge observed, an Oregon law can provide benefits for its own residents who are employees temporarily working in another state. The propriety of such employee obtaining compensation under the laws of either state, is settled. Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140; Pacific Employers Ins. Co. v. Industrial Accident Comm., 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940; Alaska Packers Ass'n v. Industrial Accident Comm., 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044. But we deal here not with any question of the appellant's right to make a claim for compensation under the Oregon law. The basic question before the trial court was whether an actionable tort had been committed in the State of Washington. As stated by Mr. Beale, "If by the law of the place where the defendant caused an event to happen this event created no right of action in tort, no action can be brought on account of the event in another state although it would create a

cause of action by the law of that other state: whether by the common law or by a statute." 2 Beale, Conflict of Laws, § 378.4.

No interest which Oregon had in Williamson as its citizen would permit that State to arm him with a body of Oregon law which he could carry about as he went into the State of Washington. Much less could it impose upon the timber company, as it carried on its Washington operations, some rule of liability evolved from Oregon legislative policy. Wholly apart from the power of Oregon to project a rule of civil liability of its own making into the State of Washington, it is plain that it has not undertaken to do so.

The proposition that legislation is presumptively territorial and confined to the limits over which the law making power has jurisdiction, was considered in New York Central R. Co. v. Chisholm, 268 U.S. 29, 45 S.Ct. 402, 69 L.Ed. 828, in which an employee on a New York Central passenger train and a citizen of the United States, suffered fatal injuries while the train was operating on a portion of the railroad's line which passed through Canada. The administrator sought recovery of damages under the Federal Employers Liability Act. In holding that there was no right of action under the act and that the carrier was subject only to such obligations as were imposed by the laws and statutes of the country where the alleged act of negligence occurred, the court said, 268 U.S. at page 31, 45 S.Ct. 402: " 'The general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done. * * * For another jurisdiction, if it should happen to lay hold of the actor, to treat him according to its own notions rather than those of the place where he did the acts, not only would be unjust, but would be an interference with the authority of another sovereign, contrary to the comity of nations, which the other state concerned justly might resent. * * * The foregoing considerations would lead in

case of doubt to a construction of any statute as intended to be confined in its operation and effect to the territorial limits over which the lawmaker has general and legitimate power. "All legislation is prima facie territorial." ' "

Nor does it aid the appellant's argument to suggest that we deal here not so much with the question of a cause of action, but rather with whether or not there is a defense to that action, and that possibly the immunity provisions of the Washington law which provide that defense may be ignored. Such an approach was attempted in Slater v. Mexican National R. Co., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900, an action brought in a United States court in Texas to recover against a Colorado corporation which operated a railroad from Texas to Mexico City. Recovery was sought for the death of a switchman injured through the defendant's negligence while coupling freight cars in Mexico. The court said, 194 U.S. at page 126, 24 S.Ct. at page 583: "But as the only source of this obligation is the law of the place of the act, it follows that that law determines not merely the existence of the obligation * * *, but equally determines its extent. It seems to us unjust to allow a plaintiff to come here absolutely depending on the foreign law for the foundation of his case, and yet to deny the defendant the benefit of *whatever limitations on his liability that law would impose.* In Northern Pacific R. Co. v. Babcock, 154 U.S. 190, 199, 14 S.Ct. 978, 38 L.Ed. 958, 961, an action was brought in the district of Minnesota for a death caused in Montana, and it was held that the damages were to be assessed in accordance with the Montana statute. Therefore we may lay on one side as quite inadmissible the notion that the law of the place of the act may be resorted to so far as to show that the act was a tort, and then may be abandoned, leaving the consequences to be determined according to the accident of the place where the defendant may happen to be caught." (Emphasis added.) See also Atchison, Topeka & Santa Fe Ry.

Co. v. Sowers, 213 U.S. 55, 67, 29 S.Ct. 397, 53 L.Ed. 695.

Appellant asserts that under the decision in Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 211, 88 L.Ed. 149, whether a cause of action existed must be determined under Oregon law and those provisions of the Oregon act which permitted an action for wrongful death by the personal representative of the employee in addition to the allowance of an award. Appellant suggests that under the full faith and credit clause of the Constitution, Article IV, § 1, even a Washington court would be obliged to give full faith and credit to the order of the State Industrial Accident Commission of Oregon making an award to plaintiff.[8] Appellant says that award involved a determination that Williamson was not subject to the compensation law of Washington.

In the Magnolia Petroleum case, supra, the injured party was a resident of Louisiana and hired there, but was injured in Texas in the course of his employment. He was awarded compensation under the Texas law which provided that employees receiving such an award "'shall have no right of action against their employer * * * for damages for personal injuries'". Hunt proceeded in Louisiana against his employer, Magnolia Petroleum Company, to recover compensation for injuries under the Louisiana compensation law and obtained judgment under that statute. This judgment was reversed on the ground that under the full faith and credit clause the Texas compensation award which in Texas was entitled to the same faith and credit as a judgment of a court must be recognized and enforced in Louisiana.

As is apparent from Industrial Commission of Wisconsin v. McCartin, supra, which distinguished the Magnolia Petroleum Co. case, the latter case has no application beyond its own special facts. The present case presents a situation quite different from that discussed in Magnolia Petroleum. If the plaintiff in this case had first procured an award of compensation in the State of Washington and then endeavored to procure compensation in the State of Oregon, or to recover damages there, and if such an award under Washington law *barred* any further recovery we would have a situation comparable to that present in Magnolia Petroleum. But such facts were not presented to the court below. Before the court could enter a judgment for plaintiff here, it must find some law which says that the defendant has been guilty of acts which now require it to pay damages to the plaintiff. In short, it must discover some cause of action. It is obvious that whatever Oregon law might have done, as in Magnolia, to *bar* an action, the order of the Oregon Commission could not *create* one. Moreover the Oregon Commission had no jurisdiction of the defendant in this case. Plainly the trial court must find an enforceable cause of action in Washington or else conclude, as it did here, that there was none.

If the full faith and credit clause has any application here, it would require the court below or any court sitting in Oregon to give full faith and credit to the law of Washington. In Jonathan Woodner Co. v. Mather, 93 U.S.App.D.C. 234, 210 F.2d 868, a workman residing in the District of Columbia was employed by a District of Columbia subcontractor to perform work on an apartment construction project being carried on by a general contractor in Maryland. The subcontractor employer had workmen's compensation for the employee's benefit under both Maryland and District of Columbia acts. The general contractor also had workmen's compensation insurance under the Maryland act for this employee's benefit. The employee chose to sue the general contractor for negligence in the United States District Court for

---

8. Under § 102–1731, O.C.L.A., a workman covered by the Oregon act who is injured when temporarily absent from the State is entitled to an award "if at the time of the accident he was not subject to the workmen's compensation law of the jurisdiction in which he was injured."

the District of Columbia. No such action was maintainable under those circumstances according to the law of Maryland, but under the District of Columbia compensation system the court assumed the employee had the right to elect to sue a third party in the position of the general contractor. The court considered the contention made that the full faith and credit clause required it to follow the Maryland law; but without committing itself upon that proposition, it stated, at page 872: "But we need not rest our decision on that basis. Approaching this case as one in which we have power to choose the law which we will apply, we think established principles of the conflict of laws point to the choice of Maryland law. In the first place, that law is the law of the place of injury. It is immemorially established that where suit is brought for an act alleged to be a tort, the law of the place where that act occurred must govern its character. If one man strikes another in Canada, Canadian law must say whether that act was justified or not, actionable or not. Otherwise an act innocent (or even commanded) in the place where it was done could have disastrous consequences in suits brought in other parts of the world. The present suit is a tort suit. Looking at it simply as such, it must stand or fall by the law of Maryland, and Maryland has barred it at its birth."

Essentially the problem here is whether the defendant is liable for wrongful death. Under the rule of the Magnolia Petroleum case an award of compensation in Oregon as between the employer and employee there might, if the Oregon law so provided, *bar* any further recovery anywhere against any other person. It is a wholly different thing to contend that any Oregon law or any determination of the Oregon Commission could *grant* to an employee or his representative a cause of action for things and acts done and performed by a stranger like this defendant in another state like Washington.[9]

The argument is that to give to the Washington law the construction which it was given in Koreski v. Seattle

---

9. Thus in Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, the Vermont statute supplied a *defense* to the Vermont employer against his Vermont employee when the latter sued in a federal court in New Hampshire for injuries in the latter state. This is far from saying that if Vermont recognized a right to sue for like injuries, while New Hampshire did not, the court in New Hampshire would be obliged to entertain such an action. So originally § 401 of the Restatement, Conflict of Laws was made to read: "If a cause of action in tort or an action for wrongful death either against the employer or against a third person has been *abolished* by a Workmen's Compensation Act of the place where the contract of employment was made or of the place of wrong, no action can be maintained for such tort or wrongful death in any state." (Emphasis added) After the decision in Pacific Employers Ins. Co. v. Industrial Accident Comm., supra, (Massachusetts employee, of a Massachusetts employer allowed compensation under California law for injuries sustained in that state notwithstanding Massachusetts remedy purported to be exclusive); § 401 was amended to read: "If a cause of action in tort or an action for wrongful death either against the employer or against a third person has been *abolished by a Workmen's Compensation Act of the place of wrong*, no action can be maintained for such tort or wrongful death in any state." (Emphasis added)

In Lanza v. Carroll, 8 Cir., 216 F.2d 808, Carroll, a citizen of Missouri, was employed there by a Missouri subcontractor. He sued Lanza, general contractor, as a "third party", for injuries received while working in Arkansas, bringing his action in the United States District Court in Arkansas. Carroll had elected to claim workmen's compensation under the Missouri law. The Missouri courts had held that under that law an employee of a subcontractor could not both collect compensation from his employer and sue the general contractor as a third party. Relying principally upon Bradford Electric Light Co. v. Clapper, supra, and Magnolia Petroleum Co. v. Hunt, supra, the court held that this provision of the Missouri law operated to bar Carroll's action. Certiorari has been granted. 348 U.S. 870, 75 S.Ct. 113. The final outcome, whatever it may be, cannot aid the appellant here.

Hardware Co., supra, and apply the Act so construed to the facts of this case, would be to render it unconstitutional. Citing Grasse v. Dealer's Transportation Co., 412 Ill. 179, 106 N.E.2d 124, appellant says the Washington Act, so construed, would create an unreasonable and unconstitutional discrimination between employees under the Act on the one hand and employees not within the Act on the other. This contention is not available to the appellant here for it was not made in the trial court.[10] In any event the contention is without merit. Northern Pacific Railway Co. v. Meese, 239 U.S. 614, 36 S.Ct. 223, 60 L.Ed. 467.

■■ We now come to the contention previously mentioned, that there was no sufficient showing that Williamson as a workman and Wood Tractor Company as an employer were subject to the provisions of the Washington Act. If, as previously suggested, this contention is made for the first time upon this appeal, it is nevertheless one which we must consider as it relates to an asserted defense. If Williamson as an ordinary invitee had been killed in consequence of negligent acts on the part of the defendant's employees, that circumstance alone would make a prima facie case for the plaintiff. That Williamson was at the time of his fatal injuries in the course of extra-hazardous employment as a workman under the Washington Act was the contention made by way of affirmative defense on the part of the appellee. If such defense was not made out the judgment cannot stand.

The record to support that contention is very brief and far from satisfactory in the light of the decisions of the Supreme Court of the State of Washington to which we shall shortly refer. In the main, the showing was contained in two paragraphs of the agreed facts set forth in the pre-trial order, one of which has been previously quoted, but both of which are set forth in the margin.[11] No witness of the fatal injury was called to testify. There was no testimony as to just what Williamson was doing at the time he was injured. The statement of defendant's contention in the pre-trial order suggests that Williamson may have been walking on a logging road. The superintendent of Wood Tractor Company, who was not present at the time of the accident, testified as to why Williamson had been sent to the Weyerhaeuser property but was unable to say what he was doing at the moment of injury.[12]

In the cases of D'Amico v. Conguista, 24 Wash.2d 674, 167 P.2d 157, and Mutti v. Boeing Aircraft Co., 25 Wash.2d 871, 172 P.2d 249, 256, the Supreme Court of Washington held that where a workman, generally covered by the Washington Compensation Act and engaged in the performance of extra-hazardous employment under that Act, nevertheless receives injuries at the hands of a third person in the position of this appellee during the employee's lunch period, for which he was not being paid and when he was free to go where he pleased and not at the moment under the control of his

10. See the interpretation of Corrigan v. Buckley, 271 U.S. 323, 46 S.Ct. 521, 70 L.Ed. 969, given in Shelley v. Kraemer, 334 U.S. 1, 8, 68 S.Ct. 836, 92 L.Ed. 1161.

11. "Lee A. Williamson was killed on April 25, 1950, by reason of an accident involving a logging truck owned by the defendant engaged in logging operations on property owned by the defendant near Castle Rock, Washington."
"At all times mentioned, Lee A. Williamson was an employee of Wood Tractor Company, an Oregon corporation engaged as a service representative for said

company. His presence upon the property of defendant was pursuant to his said employment, his employer having recently sold several caterpillar units to defendant."

12. Appellee says that appellant's claim under the Oregon Act for compensation for death resulting from injuries received in the course of Williamson's employment is an admission which supplies the required proof. But we cannot say that acts that satisfy the Oregon statute would necessarily meet the Washington standards.

employer, he was not then within the course of his employment under the Washington Act. In the D'Amico case, recovery was permitted for the death of one D'Amico who received fatal injuries as a result of the defendant's negligence at a time when D'Amico, during his lunch period, was standing at his place of employment after eating his lunch idly watching a portion of his employer's equipment and some ten or fifteen feet from where he had been working. D'Amico's employment was within the compensation act and so was that of the operator of the truck which caused his death. The court held that at the time of the fatal injury D'Amico was not in the course of his employment; hence that when he was injured he was not engaged in extra-hazardous work and therefore his administratrix could maintain the action. The decision in the Mutti case, supra, is to like effect.

We are not here suggesting that even if it were to appear that Williamson was walking to the camp boarding house during his lunch hour, or was walking about in the evening after quitting his repair work for the day, the Washington cases cited would require a finding that he was not then in the course of his employment. In the D'Amico and Mutti cases the employees worked for stated hours, at fixed places, and were paid on an hourly basis. In those cases it was noted that at the time the employee was injured he was "proceeding upon a venture of his own," and that this was "at a time when his employer had no control over him." [24 Wash.2d 674, 167 P.2d 160.] In the D'Amico case it was said: "In simple words, D'Amico at the time of his injury, and in fact during the whole noon hour, was not in the employ of the Malaspino Company." Here, if the facts

were known, we might find a very different situation,—the court might find that Williamson was continuously in the course of his employment, or at any rate had not departed from it when the injury occurred. The employer's superintendent testified that the defendant had purchased some new equipment which was just being placed in operation and that Williamson was there on a courtesy call to check the operation, see how the equipment was running and whether the operators were running the machinery properly. He was expected to stay several days in the woods and might stop while there at the Weyerhaeuser bunk house. A more complete record might show Williamson, "in the course of his employment" while merely standing and watching the equipment working, or while discussing the operation of the machines with the operators during lunch hour, or while traveling from place to place.[13]

The court's finding, adopting the language of the stipulation, that at the time of the fatal accident Williamson "was on the premises of the defendant to inspect and service logging equipment sold to the defendant by his employer", seems to us to fall just short of a finding that Williamson was then in the course of his employment.

Accordingly the judgment is vacated and the cause is remanded to the district court with instructions to make further findings with respect to the issue as to whether Williamson at the time of his fatal injuries was acting within the course of his employment. The court is directed to permit the parties to introduce further evidence with respect to such issue, and upon such further findings to enter a judgment or order not inconsistent with this opinion.

13. Cf. Thompson v. Department of Labor and Industries, 192 Wash. 501, 73 P.2d 1320: "He operated his own car in the business of his company, and was on duty all hours of the day and night."